Diana K. CHURCHEY, Petitioner,

v.

ADOLPH COORS COMPANY,
Respondent.

No. 86SC183.

Supreme Court of Colorado,
En Banc.

July 5, 1988.

As Modified on Denial of Rehearing
Aug. 8, 1988.

Marlin W. Burke, Wheat Ridge, for petitioner.

Earl K. Madsen, Jim M. Hansen, Bradley, Campbell & Carney, Golden, for respondent.

MULLARKEY, Justice.

The petitioner, Diana K. Churchey, filed a civil action stating three claims for relief against her former employer, Adolph Coors Company: wrongful discharge, defamation, and outrageous conduct. The trial court granted Coors' motions for summary judgment on all claims. The court of appeals affirmed in *Churchey v. Adolph Coors Co.*, 725 P.2d 38 (Colo.Ct.App.1986), and we granted certiorari to review that opinion. We affirm the court of appeals with respect to Churchey's claim for outrageous conduct; we reverse its judgment with respect to the wrongful discharge and defamation claims and remand to the court of appeals with instructions to return the matter to the trial court for further proceedings.

### I.

At the time she was fired, Churchey had been employed satisfactorily by Coors for seven years, was an hourly worker in the glass plant, and had no prior history of discipline. She was absent from work because of illness [1] for five consecutive work days—Monday, January 17, 1983, through Friday, January 21, 1983. Coors contends that Churchey was discharged because of "dishonesty," specifically because she "failed and refused to report her medical clearances to return to work for January 19 and 21." Churchey denies that she was dishonest in her dealings with the company.

The following events form the background leading to Churchey's discharge. Churchey became ill with an eye infection during her days off on a weekend. After seeing her physician, she called her supervisor on Sunday and informed him of her condition and her need to be absent from work on Monday, January 17. He asked her to keep him advised. When she saw her physician again on Monday, he referred her to a specialist. After seeing the specialist, Churchey called her supervisor, explained that she had been diagnosed as having conjunctivitis, and requested a leave of absence. He told her to report to the Coors' medical center. On Tuesday, January 18, Churchey reported to the medical center and was examined by a Coors' nurse practitioner who confirmed that she had conjunctivitis and ordered her to return to work on Wednesday. Apparently, Churchey's condition worsened overnight and on Wednesday she was examined by her doctor and two consulting specialists. They diagnosed her as having maxillary sinusitis in addition to conjunctivitis, and told her

---

1. Churchey was diagnosed as having conjunctivitis and maxillary sinusitis. Conjunctivitis is an inflammation of the conjunctiva, the tissue which lines the back of the eyelid. *See generally The Merck Manual of Diagnosis and Therapy* ch. 219, at 2218–20 (15th ed. 1987). Her condition sometimes is described in the record as "pinkeye" which is a contagious form of conjunctivitis. Maxillary sinusitis is an inflammation of the air spaces located in the upper jaw bone on each side of the nose (the "maxillary sinuses");

it causes pain in that area, toothache, and frontal headache. *See generally The Merck Manual, supra,* ch. 208, at 2196–97; 3 J. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* S–94 to S–97. Sinusitis has a variety of causes. Treatment focuses on improving drainage and controlling infection, *see The Merck Manual, supra,* and "[p]atients with severe symptoms should be put to *bed.*" 12 *The Cyclopedia of Medicine, Surgery, Specialties* 703–04 (1973 & Rev.1975) (emphasis in original).

not to return to work until the following Monday, January 24.

Early on Wednesday (the first day that Coors asserts that Churchey was dishonest) Churchey called the lead man who was one of her supervisors and asked to be excused from work because of illness. He was unfamiliar with the company leave policy and indicated that he would call her back that day. He contacted her that afternoon and told her to report to the medical center. The record does not disclose the time of the lead man's call, whether he told Churchey she had to go to the medical center that day, or even whether she could have been seen at the medical center that day.

On Thursday morning, Churchey gave her supervisor the form which the nurse practitioner had completed on Tuesday, directing her to return to work on Wednesday. The supervisor placed the form in his letter tray without reading it. Churchey did not inform him verbally that she had been released to return to work on Wednesday. Pursuant to her supervisor's instructions, Churchey then reported to the Coors' medical center. After she was examined, the nurse practitioner excused her from work until the following day, when she was scheduled to see a Coors' physician. That afternoon, her supervisor read the medical release form which Churchey had given him earlier that day. Her supervisors, after consulting with a Coors' personnel specialist, decided to suspend her pay as of the previous day. Churchey was not notified of this decision.

When Churchey saw the Coors' physician on Friday, January 21 (the second day on which she allegedly was dishonest), he signed a Coors' medical treatment request form which Churchey's supervisor had dated January 24. Believing the form authorized her to be absent from work, and unaware that her pay had been suspended, Churchey returned home. When the doctor spoke with her supervisor shortly after she left, he learned that she had been scheduled to work that day. He told the supervisor that Churchey had said she was not scheduled to work until the following Tuesday, January 25. Based on the doctor's statement that Churchey could have worked on Friday, her supervisors met again with a company personnel specialist and they decided to suspend her if she did not come to work by 3:30 p.m. that day. No one informed her of this decision and, relying on the form which the Coors' doctor had signed, she did not report back to work on that Friday.

When she returned to work on her first scheduled work day the following week, Tuesday, January 25, her supervisors met with her, questioned her, and informed her that she was suspended. The next day she was discharged. Churchey requested review by Coors' appeal board, which affirmed her discharge, and she then filed this civil action.

## II.

After being served with Churchey's complaint, Coors filed a "motion to dismiss" pursuant to C.R.C.P. 12(b)(1) and 12(b)(5). Because Coors attached affidavits and exhibits to its motion, the court properly treated Coors' motion as one for summary judgment. *See* C.R.C.P. 12(b); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985); *Enger v. Walker Field, Colo. Pub. Airport Auth.*, 181 Colo. 253, 256–57, 508 P.2d 1245, 1247 (1973). In response, Churchey filed her own summary judgment motion. The trial court denied Churchey's motion as to all claims, granted Coors' motion for summary judgment on the wrongful discharge claim, and denied Coors' motion with respect to Churchey's claims for defamation and outrageous conduct.

Six months later, Coors moved for summary judgment on the two remaining claims. Churchey opposed this motion but did not file a second summary judgment motion of her own. The trial court granted Coors' motion with respect to both remaining claims—outrageous conduct and defamation.

Because each of Churchey's claims was resolved by summary judgment, we first summarize the principles governing our review of summary judgments. Summary judgment is a drastic remedy and

is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *E.g., Pueblo W. Metro. Dist. v. Southeastern Colo. Water Conservancy Dist.,* 689 P.2d 594, 600 (Colo.1984); *Ginter v. Palmer & Co.,* 196 Colo. 203, 205, 585 P.2d 583, 584 (1978); *Abrahamsen v. Mountain States Tel. & Tel. Co.,* 177 Colo. 422, 426, 494 P.2d 1287, 1288 (1972). The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Travelers Ins. Co. v. Savio,* 706 P.2d at 1276; *Ginter,* 196 Colo. at 206, 585 P.2d at 584; *Primock v. Hamilton,* 168 Colo. 524, 528, 452 P.2d 375, 378 (1969). A party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Kaiser Found. Health Plan v. Sharp,* 741 P.2d 714, 718 (Colo.1987); *Mount Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 239 (Colo. 1984). The same standards should be applied by an appellate court reviewing a summary judgment order. *See generally* 6 J. Moore & J. Wicker, *Moore's Federal Practice,* pt. 2, ¶ 56.27[1] (2d ed. 1987 & 1987–88 Supp.); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716 (2d ed. 1983) ("reviewing court only may determine whether a genuine issue exists and whether the law was applied correctly; it cannot decide disputed issues of material fact."); Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 489–93 (1984).

As explained above, both Churchey and Coors initially moved for summary judgment. This fact did not decrease either party's burden of proof. When, as here, a trial court is presented with cross-motions for summary judgment, it must consider each motion separately, review the record, and determine whether a genuine dispute as to any fact material to that motion exists. If there are genuine disputes regarding facts material to both motions, the court must deny both motions.

*See Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983, 989 n. 3 (Colo.1987); *id.* at 992 (Quinn, C.J., dissenting); *Morlan v. Durland Trust Co.,* 127 Colo. 5, 14, 252 P.2d 98, 102 (1952). *See generally* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.13, at 56–174 (2d ed. 1988) ("Good sense and sound theory combine to produce the rule."); 10A C. Wright, A. Miller & M. Kane, *supra,* § 2720, at 16–17 ("the fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit.") (footnote omitted).

Cross-motions for summary judgment are not an exception to the rule that "the determination whether a genuine issue concerning a material fact exists ... must be decided by the court." 10A C. Wright, A. Miller & M. Kane, *supra,* § 2720, at 19. Further, a party's failure to satisfy the burden of proof on its own motion for summary judgment "does not automatically indicate that the opposing party has satisfied [its] burden and should be granted summary judgment on the other motion." *Id.,* § 2720, at 23 (footnote omitted). When a party's motion for summary judgment is denied, that party's admission of the absence of a factual dispute terminates. *Morlan,* 127 Colo. at 14, 252 P.2d at 102; 10A C. Wright, A. Miller & M. Kane, *supra,* § 2720, at 20–22. Therefore, Churchey's assertion that the facts material to her legal theory were undisputed could "not be applied in connection with [Coors'] similar motion" and was "terminated" when her motion was denied. *Morlan,* 127 Colo. at 14, 252 P.2d at 102. The question now before this court is whether Coors has met its burden of proving both that there are no relevant issues of material fact and that it is entitled to judgment as a matter of law as to each of Churchey's three claims.

### III.

### A.

Churchey's first claim, defamation, is based on the fact that Coors terminated

her for "dishonesty." A cause of action for defamation requires, at a minimum, publication of a false statement of defamatory fact. *See Burns v. McGraw–Hill Broadcasting Co.,* 659 P.2d 1351, 1360 (Colo.1983); *see also Switzer v. Anthony,* 71 Colo. 291, 295, 206 P. 391, 392 (1922). *See generally Prosser & Keeton on the Law of Torts* § 113 (W. Keeton, D. Dobbs, R. Keeton & D. Owen, 5th ed. 1984). The statement that Churchey was "dishonest" is clearly defamatory and Coors has not disputed this. However, in its answer, Coors denied that the statement was false.

 Truth is an affirmative defense to an allegation of defamation. CJI–Civ.2d 22:14. One who is alleged to have defamed another has a constitutional and statutory right to assert the truth of the defamatory statement and to have a jury decide such a defense. *See* Colo. Const. art. II, § 10; § 13–25–125, 6A C.R.S. (1987). Neither the trial court nor the court of appeals addressed the truth of the statement because each disposed of the defamation claim on publication grounds. Because our constitutional provision reserves to the jury the question of the truth of an allegedly defamatory statement, courts have been reluctant to take the question away from the jury. *Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337 (1972) (reversing summary judgment for plaintiff in libel case); *Pittman v. Larson Distrib. Co.,* 724 P.2d 1379, 1389 (Colo.Ct.App.1986) (reversing directed verdict for defendant on slander claim).

The record before us discloses that a jury trial was demanded by the plaintiff and that there are sharp factual conflicts between the parties on the issue of dishonesty. Churchey has contended from the beginning that she followed the personnel policies to the best of her ability and that she was not dishonest. She asserts that her failure to appear for work cannot constitute an act of dishonesty and that she did not deceive either her supervisors or the medical personnel. Coors contends

that Churchey was dishonest when, on two separate occasions, she failed to tell her supervisors that Coors' medical personnel had instructed her to return to work and that, on the second occasion, she lied to the Coors' physician.

Initially, we note that the record contains contradictory statements and evidence regarding whether Churchey had an obligation to inform her supervisor of the medical center's instructions. The existence of such an obligation is key to Coors' assertion that, by her inaction, Churchey deceived her supervisors. One of the affidavits submitted by Coors indicates that it is the employee's responsibility to inform the supervisor of a medical release, but another Coors' affidavit states that it is standard procedure for the nurse practitioner to inform the supervisor. Churchey's affidavit asserts that her supervisor never instructed her to return the medical forms to him immediately, and we note that the medical leave of absence policy itself is silent on this question. Coors' medical records regarding Churchey's visits to the medical center on January 20 and 21 [2] are stamped with a series of boxes and blanks to be filled in by the examining doctor or nurse practitioner, including a box for "Supervisor Notified." That box was checked on both records, indicating that the medical personnel contacted Churchey's supervisor on at least those two occasions.

In addition, the evidence regarding each incident is susceptible of reasonable interpretations other than dishonesty. The first incident occurred after the Coors' nurse practitioner had examined Churchey on Tuesday, January 18, and had directed her to return to work the following day. On Wednesday, Churchey neither reported for work nor expressly told her supervisors of the nurse practitioner's directions. Coors' affidavits state that this constituted dishonesty and not an innocent mistake. They stress that Churchey was familiar with the medical leave of absence policies because

---

2. The record does not include the entire medical record regarding her January 18 examination. Specifically, the series of boxes and blanks described in the text is not in the record for that date.

she previously had taken an extended leave when she had major surgery.

However, Churchey contends that she did not return to work on Wednesday because her condition worsened after she saw the nurse practitioner. This explanation is supported by Churchey's affidavit, which incorporates the statement of facts in her brief, and also by several other documents. For example, in a memorandum written by her supervisor and submitted as an exhibit by Churchey, her supervisor stated that on January 21, the Coors' physician told him that Churchey had not reported for work on Wednesday, January 19, because she had developed a sinus infection in addition to the conjunctivitis. The record also shows that on Wednesday, her private doctors diagnosed her as having maxillary sinusitis and instructed her not to return to work before the following Monday. In addition, the record shows that on Wednesday Churchey called a supervisor early in the morning to request a leave of absence. This action could be seen as disclosing to her supervisor that she had not been excused from working that day by Coors' medical personnel but now sought permission to be absent because her condition had worsened. Further, when she saw her principal supervisor on Thursday, Churchey handed him the medical release form which clearly indicated that the nurse practitioner had ordered her back to work on the previous day. (As noted above, the supervisor did not read the form.) Her conduct in these two instances tends to negate Coors' assertion that Churchey intentionally concealed from her supervisors the fact that she had been released by the nurse practitioner to return to work on Wednesday.

The second incident on which Coors based its termination of Churchey occurred on Friday, January 21, when she was examined by a Coors' physician. The physician examined Churchey and signed a form which Churchey's supervisor had dated January 24. Without changing the date on the form, the doctor checked the box which stated that Churchey could return to work without restrictions. Churchey states that the doctor knew the form was dated January 24. The postdating of the medical

form is significant because, on its face, the document indicates that Churchey was excused from work until January 24. Accordingly, she reasonably could have assumed that she had been released from work until that date, as her private physicians had recommended. However, Coors' affidavits state that the doctor released Churchey to return to work immediately on January 21 and that she was dishonest for not reporting this to her supervisor.

During oral argument in the trial court, Coors' attorney conceded that there was a factual dispute as to whether the Coors' physician told Churchey to return to work on January 21. We agree. The record could support at least three conclusions: (1) Churchey was instructed to return to work on January 21, but deliberately failed to follow those instructions; (2) Churchey was released from work until January 24 and violated no work rule by going home; and (3) Churchey was instructed to return to work but mistakenly thought she did not have to return to work until January 24.

The record is also contradictory regarding what Churchey told the Coors' doctor on January 21. The parties agree that Churchey was not scheduled to work Saturday, January 22, through Monday, January 24. Coors asserts that Churchey untruthfully told the Coors' physician that she did not have to work on Friday, January 21. Churchey, on the other hand, vigorously denies lying to the physician.

Given the disputes of fact in the record and the varying inferences that can be drawn from those facts, we cannot say as a matter of law that Churchey was "dishonest." We must leave that for the jury to decide. *See Mount Emmons Mining Co.,* 690 P.2d at 239 ("Even if the historical facts underlying the mixed question [of law and fact] might be undisputed, as long as a reasonable trier of fact nevertheless could draw divergent inferences from the application of the legal criteria to the facts, summary judgment should be denied."). Therefore, for purposes of reviewing the summary judgment we accept as true Churchey's allegation that the statement was false. *See Abrahamsen v. Mountain*

*States Tel. & Tel. Co.*, 177 Colo. 422, 426, 494 P.2d 1287, 1289 (1972); *see generally Prosser & Keeton, supra,* § 116, at 839–41 (law presumes all defamatory statements are false and defendant has burden of pleading and proving truth).

## B.

■ We next turn to the issue of publication. The statement that Churchey was "dishonest" may have been made and published during the discussions that the Coors' supervisory personnel had about her conduct. *See generally Prosser & Keeton, supra,* § 113, at 798–99 (publication may be made to anyone, even agent of defendant). Any such publication, however, was subject to a qualified privilege, *see Denver Pub. Warehouse Co. v. Holloway,* 34 Colo. 432, 83 P. 131 (1905); *see generally Prosser & Keeton, supra,* § 115, at 828–29 (communication to protect common interest), and Churchey does not base her claim on those communications.

■ Instead, in her amended complaint, she asserts that publication occurred because she "has been forced to repeat the reason for her discharge to prospective employers to her damage and detriment, an event which was or should have been foreseeable by the Defendant and is, accordingly, attributable to the Defendant." This theory of publication has not been addressed previously in Colorado. The trial court recognized the general rule that a defamatory remark must be published to someone other than the defamed person to create a cause of action for defamation. *See generally Prosser & Keeton, supra,* § 113, at 797. However, it concluded that the exceptions set forth in the *Restatement (Second) of Torts* section 577 comments k and m (1977) were the law in Colorado. Comment k to section 577 of the *Restatement, supra* ("comment k"), provides as follows:

k. *Intentional or negligent publication.* There is an intent to publish defamatory matter when the actor does an act for the purpose of communicating it to a third person or with knowledge that

it is substantially certain to be so communicated. ...

It is not necessary, however, that the communication to a third person be intentional. If a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person, the conduct becomes a negligent communication. A negligent communication amounts to a publication just as effectively as an intentional communication.

Comment m to section 577 of the *Restatement, supra* ("comment m"), provides that:

m. *Recipient is the defamed person.* One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person if there are no other circumstances. If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred.

The trial court reasoned that if Coors had known that there was a substantial certainty that communication to a third person by Churchey was likely, or if a reasonable person would have foreseen this likelihood, publication had occurred. The trial court granted Coors' motion for summary judgment because it found "nothing to indicate the defendant knew or should have foreseen the likelihood of publication by the plaintiff of the reasons for termination at the time it communicated those reasons to her." The court of appeals affirmed on different grounds, rejecting the foreseeability exception and concluding that it was undisputed that there had been no unprivileged communication of the grounds of Churchey's termination to anyone other than herself. 725 P.2d at 41.

In this court, Churchey argues that comment k correctly states the law in Colorado and that, under the theory set forth in that comment, her allegations of publication were sufficient. Coors disagrees, contend-

ing that Colorado does not recognize an exception broader than comment m. We agree with Churchey that the special circumstance outlined in comment m is not relevant to the instant case. That circumstance exists when the defamed person transmits the defamatory material "without an awareness of the defamatory nature of the matter." Churchey was aware of the defamatory nature of the statement that she had been terminated for dishonesty. Therefore, we need not give further consideration to the special circumstance outlined in comment m.

The text of comment k explains that conduct which creates an unreasonable risk that defamatory matter will be published to one other than the defamed person amounts to publication. The circumstances alleged by Churchey do fall within this special situation, so the question of whether comment k correctly states the law is squarely before us. Although this is a question of first impression in Colorado, many other jurisdictions have ruled on this issue and have developed two formulations of the exception. Both formulations permit a defendant to be held liable for certain foreseeable "self-publication," *i.e.*, when the defendant communicates a defamatory statement only to the plaintiff and the plaintiff publishes it to other people. The first approach imposes liability if the defendant knew or could have foreseen that the plaintiff would be *compelled* to repeat the defamatory statement; the second imposes liability if the defendant knew or could have foreseen that the plaintiff was *likely* to repeat the statement.

We agree with the former approach, as set forth by the California Court of Appeal: when "the originator of the defamatory statement has reason to believe that the person defamed will be under a *strong compulsion* to disclose the contents of the defamatory statement to a third person," the originator is responsible for that publication. *McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 796, 168 Cal. Rptr. 89, 93–94 (1980) (emphasis added). In *McKinney,* the court explained that:

> The rationale for making the originator of a defamatory statement liable for its

foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication. This causal link is no less strong where the foreseeable republication is made by the person defamed operating under a strong compulsion to republish the defamatory statement and the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.

*Id.,* 110 Cal.App.3d at 797–98, 168 Cal.Rptr. at 94. *See also Colonial Stores, Inc. v. Barrett,* 73 Ga.App. 839, 38 S.E.2d 306 (1946) (exception applies when defendant knew plaintiff would be required by regulation to disclose statement to prospective employers); *Belcher v. Little,* 315 N.W.2d 734, 737–38 (Iowa 1982) (originator knows or should know statement "*must* eventually come to the attention of others"); *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 886–88 (Minn.1986) (originator knew or should have known "of circumstances whereby the defamed person has no reasonable means of avoiding publication of the statement"); *Davis v. Askin's Retail Stores, Inc.,* 211 N.C. 551, 191 S.E. 33, 35 (1937) (defendant "must have foreseen the plaintiff's necessary exposure" of the defamatory statement); *Bretz v. Mayer,* 203 N.E.2d 665, 669–71 (Ohio C.P.1963) ("patently inevitable" that plaintiff would reveal communication). *See generally Prosser & Keeton, supra,* § 113 (discussing cases in which "because of the plaintiff's blindness or immaturity, or because of some necessity he was under to communicate the matter to others," self-publication has been recognized).

The trial court followed those jurisdictions which have recognized a more literal interpretation of comment k, holding that it is sufficient if a reasonably prudent person would have expected the plaintiff to republish the communication. *See Grist v. Upjohn Co.,* 16 Mich.App. 452, 168 N.W.2d 389, 405–06 (1969) (publication may occur when originator of statement "intends or has reason to suppose that in the ordinary

course of events the matter will come to the knowledge of some third person"); *Neighbors v. Kirksville College of Osteopathic Medicine,* 694 S.W.2d 822 (Mo.Ct. App.1985) (defendants "had reason to know that in the ordinary course of events the letter would be read by third parties"); *Chasewood Constr. Co. v. Rico,* 696 S.W. 2d 439, 444–45 (Tex.Ct.App.1985) (jury finding that defendant, "as a reasonably prudent person, should have expected that his defamation of [plaintiff] to his face would be communicated to others by [plaintiff]" was sufficient); *First State Bank v. Ake,* 606 S.W.2d 696, 701–03 (Tex.Civ.App.1980) (if communication to third party "is likely," publication has occurred). *But see Carson v. Southern Ry. Co.,* 494 F.Supp. 1104, 1113–14 (D.S.C.1979) (defendant not liable for publication made by plaintiff, even though publication "was to be expected").

We believe that the trial court's broad construction of the foreseeable self-publication exception would impose unreasonable liability on defendants for harm they did not cause directly and would discourage some communications which, on balance, should be encouraged. When the originator of the statement reasonably can foresee that the defamed person will be compelled to repeat a defamatory statement to a third party, there is a strong causal link between the originator's actions and the harm caused to the defamed person; this causal connection makes the imposition of liability reasonable. *See McKinney,* 110 Cal.App. 3d at 797–98, 168 Cal.Rptr. at 94. If publication could be based on the defamed person's freely-made decision to repeat a defamatory remark, however, the defendant would be held liable for damages which the plaintiff reasonably could have avoided. In other contexts, we have held that "one may not recover damages for an injury which he might by reasonable precautions or exertions have avoided." *Valley Dev. Co. v. Weeks,* 147 Colo. 591, 596, 364 P.2d 730, 733 (1961) (intentional invasion of property right); *see also Tull v. Gundersons, Inc.,* 709 P.2d 940, 946 (Colo.1985) (breach of contract). In the case of a voluntary self-publication, the plaintiff could have avoided the damage to his or her reputation, as well

as emotional distress and any other harm, simply by declining to repeat the defendant's statement. In addition, as discussed below in part III.C, both employers and employees have significant interests in open communication about job-related problems. Imposing liability for self-publication which is "likely" but not compelled would unnecessarily deter such communication. For these reasons, we reject the trial court's interpretation of comment k.

Applying the foreseeability exception to this case, we conclude that the trial court erred by granting summary judgment for Coors. The trial court relied on the absence of any evidence supporting Churchey's allegation that Coors reasonably could have foreseen that she would be compelled to disclose the reason for her termination to prospective employers. However, in ruling on a motion for summary judgment, the trial court must accept the material allegations of the nonmoving party's pleadings as true "unless the depositions and admissions on file, together with the affidavits, clearly disclose that there is no genuine issue as to any material fact." *Abrahamsen,* 177 Colo. at 426, 494 P.2d at 1288–89; *see also Norton v. Leadville Corp.,* 43 Colo.App. 527, 530, 610 P.2d 1348, 1350 (1979). In this case, Churchey's amended complaint alleged that Coors was or should have been able to foresee that she would be forced to repeat the reason for her discharge. Coors never submitted affidavits or other evidence on this issue, nor did it argue that compelled self-publication was not foreseeable. Therefore, the trial court should have accepted Churchey's allegation of foreseeability as true for purposes of Coors' summary judgment motion. *Cf. Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987) ("The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party."); *Jefferson County School Dist. R–1 v. Justus,* 725 P.2d 767, 773 (Colo.1986) (because defendant "did not raise nonreliance as grounds for summary judgment before the trial court, it did not meet its burden of showing that [plaintiff] did not rely"). Summary judgment should

not have been granted based on the lack of evidence of foreseeability.

### C.

 We now turn to Coors' assertion that the trial court's judgment should be affirmed because Coors had a qualified privilege to reveal to Churchey the reason for her termination. Determining when a qualified privilege should protect a communication is a question of law requiring the court to balance the interests protected by a privilege and the interests served by allowing a defamation action. For example, in *Dominguez v. Babcock,* 727 P.2d 362 (Colo.1986), we held that a memorandum by faculty members setting forth their reasons for requesting that a department head be reassigned was subject to a qualified privilege "because it was published by persons having a common interest in the subject matter to persons sharing that interest." *Id.* at 365 (citing *Restatement, supra,* § 596). After balancing the interests of the defamed person in the protection of his reputation against the interests of others in allowing the publication, we concluded that the interest in permitting coworkers to comment was of sufficient importance to merit the protection of a qualified privilege. *Id.* at 366.

 In our view, the interests of employers and employees in assuring that employees know the reasons for their discharges and are not fired based on mistaken beliefs outweigh any harm which the knowledge of a negative reason may cause an employee. Therefore, an employer's communication to an employee of its reasons for discharging that employee is subject to a qualified privilege. This conclusion is supported by the existence of other qualified privileges in the employment context, such as the qualified privilege applicable to inter-office memoranda, *Abrahamsen,* 177 Colo. at 427, 494 P.2d at 1289, the qualified privilege protecting the right of corporate officers to communicate with one another about their employees' conduct,

*Denver Pub. Warehouse Co. v. Holloway,* 34 Colo. 432, 83 P. 131 (1905), and the qualified privilege of an employer to explain the reasons for an employee's discharge to other employees, *Patane v. Broadmoor Hotel, Inc.,* 708 P.2d 473 (Colo. Ct.App.1985).

 However, this conclusion does not mean that Coors was entitled to summary judgment. Once the court determines as a matter of law that a qualified privilege applies to the defendant's communication, the plaintiff has the burden of showing that, as a matter of fact, the defendant "publishe[d] the material with malice, that is, knowing the matter to be false, or act[ed] in reckless disregard as to its veracity." [3] *Dominguez,* 727 P.2d at 366; *see also Abrahamsen,* 177 Colo. at 427, 494 P.2d at 1289 (whether communication is privileged is question of law; existence of malice is question of fact); *Ling v. Whittemore,* 140 Colo. 247, 343 P.2d 1048 (1959) (same).

Coors has not demonstrated the absence of any material issue of fact which would justify summary judgment in its favor on the question of malice. To the contrary, some evidence in the record may support Churchey's contentions that her supervisors recklessly disregarded the truth when, based on their belief that Churchey had not followed a leave of absence policy, they stated that she had been dishonest, because (1) on its face, that policy did not apply to her; (2) they failed to determine what constituted dishonesty under the personnel manual; and (3) they failed to verify the underlying facts by contacting Churchey or her physicians. *See* discussions in part III.A and IV. She also asserts that Coors used the dispute over her absence as a pretext for terminating her employment. Each of these assertions, if supported by evidence, would be relevant to the issue of Coors' malice. On remand, therefore, Churchey must be permitted to introduce evidence in order to meet her burden of proving that Coors made the communica-

---

**3.** This is the standard for nonmedia defendants. *See Dominguez,* 727 P.2d at 366 n. 1 ("focus in

the media cases is on a robust press").

tion with malice. *Cf. Abrahamsen*, 177 Colo. at 427, 494 P.2d at 1289 (existence of malice is matter of fact which generally should "be determined exclusively by the jury").

### D.

▆▆▆▆ Finally, Coors contends that remand is unnecessary because, by using Coors' appeal board procedure, Churchey consented to being told the reason for her termination. Colorado does recognize consent as a complete defense to a defamation action under some circumstances. *See, e.g., Dominguez*, 727 P.2d at 364–65. However, in this case, Churchey's supervisor informed her that she was being terminated for dishonesty on January 26, 1983. Her subsequent request for a hearing before the appeal board did not constitute consent to the communication which already had occurred. *Cf. Dominguez*, 727 P.2d at 364 (quoting *Restatement, supra*, § 584, which provides that "[a]n honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of the defamatory publication is not a defense"). Coors' consent argument is, therefore, not applicable to these facts.

### E.

▆▆▆ In summary, we conclude that the element of publication can be established by self-publication if the plaintiff proves that it was foreseeable to the defendant that the plaintiff would be under a strong compulsion to publish the defamatory statement. We also recognize that a qualified privilege protects an employer's statements to an employee of the reasons for that employee's termination; such a privilege may be overcome by a showing of "malice," *i.e.*, a showing that the employer knew the statement was false or acted in reckless disregard as to its veracity. Because Coors failed to show that there was no material issue of disputed fact as to Churchey's defamation claim, summary judgment in favor of Coors was incorrect.

### IV.

Churchey's second claim is for wrongful discharge in violation of the termination provisions in Coors' written personnel manual.[4] This claim has two prongs. First, Churchey contends that Coors could not dismiss her without warning because she was, at most, absent without leave (AWOL), an offense which is subject to Coors' progressive discipline policy. Progressive discipline is a policy under which employees must be warned and given a second chance prior to being terminated for the prohibited conduct. Coors' policy entitled "Work Rules and Corrective Discipline" provides as follows:

> AWOL is defined as failure to call in within the first two hours of the shift or get prior permission when absent on a scheduled workday.

> One instance of AWOL is subject to a final written warning. Two days AWOL in any 12–month period is grounds for automatic dismissal.

These work rules also provide that certain types of violations, including dishonesty, "are of a nature so serious that they are cause for immediate dismissal upon the first offense." Coors' "Philosophy Statement" defines dishonesty as "To cheat, deceive, embezzle or defraud the company, including making or supplying false statements or information."

Churchey's second assertion is that Coors lacked good cause for discharging her and did not follow its medical leave of absence policy in her case, but instead used her illness as a pretext for discharging her. Coors' policy entitled "Leaves of Absence" provides that "An approved leave of absence is required for all absences of more than ten consecutive calendar days off." She argues that because her private doctors had advised her that she could return to work on January 24, she did not anticipate being absent for more than ten con-

---

**4.** According to affidavits submitted by Coors, the personnel policies were posted on a company bulletin board and the company held group meetings, which Churchey and others attended, to explain the policies to its employees.

secutive calendar days and Coors wrongly applied the leave of absence procedures to her. The record does not include Coors' policy with respect to absences of ten or fewer consecutive calendar days.

■ The trial court found that there was no genuine issue of material fact with respect to Churchey's wrongful discharge claim and that Churchey's employment was terminable at will. Applying Colorado law as it existed at the time, the court concluded that Coors was entitled to judgment as a matter of law because "[n]o action lies for wrongful discharge or breach of contract under that type of employment." In affirming the trial court, the court of appeals observed that while Churchey's appeal was pending, Colorado had recognized a "good cause" exception to the terminable at will rule. *Churchey*, 725 P.2d at 40 (citing *Salimi v. Farmers Ins. Group*, 684 P.2d 264 (Colo.Ct.App.1984)). The court of appeals concluded that the newly-recognized exception did not require reversal because, "[c]ontrary to plaintiff's allegation, she has not set forth any instances of defendant's failure to comply with the company rules regarding discipline; hence, no material issue was presented as to the alleged breach of contract or wrongful discharge, and summary judgment was properly entered." *Churchey*, 725 P.2d at 40.

The trial court considered the facts irrelevant because it held that an employee who originally was terminable at will could never bring a wrongful discharge action. However, we rejected this assumption in a very similar case, *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).[5] The plaintiff in *Keenan* had filed a wrongful discharge action alleging that his employer had given him "job security assurances" in an employee handbook and then had failed to follow its own policies. The trial court granted the employer's motion for summary judgment, reasoning that the termination procedures in such a handbook never were binding when the employee originally was terminable at will. On cer-tiorari review, we outlined two theories under which an employee could enforce the termination provisions in an employee manual—offer and acceptance or promissory estoppel. We then reversed the summary judgment and remanded for reconsideration.

Under the first approach recognized in *Keenan*, an employee must show that the employer's promulgation of termination procedures was an offer and that the employee's initial or continued employment constituted acceptance of that offer. 731 P.2d at 711 & n. 1. In discussing the application of offer and acceptance reasoning to employee manuals in *Keenan*, we cited favorably decisions by several other courts. *See, e.g., Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Langdon v. Saga Corp.*, 569 P.2d 524 (Okla.Ct.App.1976). In *Langdon*, the Oklahoma Court of Appeals explained that a personnel manual could be construed as an offer which was accepted by an employee's continuing to work and foregoing his or her option of terminating employment and looking for employment elsewhere. 569 P.2d at 527. In *Toussaint*, the Supreme Court of Michigan reasoned as follows:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in

5. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), was decided on January 20, 1987, after both the trial court and court of appeals had ruled on the validity of Churchey's claims. Therefore, neither of those courts had the benefit of our analysis in *Keenan*.

which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

292 N.W.2d at 892 (footnotes omitted).

Under the promissory estoppel approach set forth in *Keenan*, termination procedures can be enforced if the employee can demonstrate that "the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." 731 P.2d at 712. In recognizing that this theory applies to the employment context, we cited with approval opinions from numerous other jurisdictions. *See, e.g., Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 455–56, 168 Cal.Rptr. 722, 729 (1980) (two factors "of paramount importance" to decision to use promissory estoppel analysis are long history of satisfactory service by employee and existence of termination policy set forth by employer); *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 153–54 (Mo.Ct.App. 1983) (employer is under no obligation to establish personnel policies, but "having chosen to do so and having made them known to its employees, the employment relationship was thereby presumably enhanced.... [T]he jury could consider [handbook's] statements to find for [em-

ployee] on her legitimate expectations grounded on [employer's] written policy statements set forth therein.").

■ The procedural posture of this case is identical to that in *Keenan*. In both cases, the trial court granted summary judgment based on the employment at will doctrine in spite of the undisputed fact that the employer had distributed written personnel policies to the employees. As in *Keenan*, we conclude that employees can rely on the termination provisions in employee manuals to state wrongful discharge claims. Therefore, Coors was not entitled to summary judgment under the employment at will doctrine. It is clear from our discussion in part III.A that there are genuine disputes of material fact regarding Coors' contention that Churchey was dishonest. Similarly, there is no doubt that material disputes exist regarding Coors' argument that it followed its policies with respect to Churchey's discharge.[6] Finally, in light of the two theories described above, further development of the facts will be necessary to determine whether there are genuine disputes regarding the facts material to Coors' assertion that its personnel policies are not binding. Therefore, summary judgment on this claim was not appropriate.

## V.

■ Churchey's final claim is for outrageous conduct. Both the trial court and the court of appeals recognized that the tort of outrageous conduct does exist in Colorado, but concluded that no construc-

---

6. Coors argues that Churchey is bound by the results of the company's appeal board procedure because, at most, Coors was required to do only what it promised in the manual. Apparently Coors believes that holding the review hearing was sufficient to fulfill its promises. The record before us does not permit this conclusion. The policies which are part of the record indicate that Coors established a progressive discipline procedure, which means that employees were told they would not be terminated for being absent without leave and a variety of other infractions unless they had received a prior warning. The fact that Coors also established an appeal board procedure for dissatisfied employees did not render the progressive

discipline policy meaningless and there appears to be a genuine dispute as to whether Coors was required to follow its progressive discipline policy in Churchey's case. Wrongful discharge claims based on an employer's failure to follow progressive discipline procedures have been recognized in several cases. *E.g., Hoffman–La-Roche, Inc. v. Campbell*, 512 So.2d 725, 736–37 & n. 5 (Ala.1987); *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 106 Ill. Dec. 8, 12–13, 505 N.E.2d 314, 318–19 (1987); *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 883 (Minn.1986); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 630–31 (Minn. 1983).

tion of the facts alleged or presented by Churchey could amount to extreme and outrageous conduct. Therefore, the trial court granted summary judgment on this issue and the court of appeals affirmed.

Colorado has set forth the following test for outrageous conduct:

Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970) (quoting *Restatement, supra,* § 46 (1965)). We have explained that the conduct must be:

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Rugg,* 173 Colo. at 177, 476 P.2d at 756 (quoting *Restatement, supra,* § 46 comment d).

Consistent with the *Restatement, supra,* section 46 comment h, Colorado case law provides that the court should determine in the first instance whether reasonable people may differ as to whether the conduct of the defendant has been "sufficiently extreme and outrageous to result in liability." *See, e.g., Bauer v. Southwest Denver Mental Health Center, Inc.,* 701 P.2d 114, 118 (Colo.Ct.App.1985) ("If, after viewing the evidence in the light most favorable to the plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate."); *Meiter v. Cavanaugh,* 40 Colo.App. 454, 457, 580 P.2d 399, 401 (1978); *see also Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1524 (D.Colo.1987) ("it is for the trial court to determine, in the first instance, whether the conduct could be regarded as sufficiently atrocious to permit recovery").

Churchey asserts that the trial court and court of appeals considered only her firing in evaluating her outrageous conduct claim and that a reasonable person, considering the totality of the circumstances, could have found that Coors' conduct was outrageous. Churchey also contends that our current test for outrageous conduct is too subjective and that we should require trial courts to look at the relationship between the parties and the entire conduct in determining whether a plaintiff has set forth a prima facie case of outrageous conduct.

Churchey relied on the following specific actions as examples of Coors' outrageous conduct: firing her for dishonesty; failing to follow its own policies; causing her to have to tell prospective employers that she had been terminated for dishonesty; requiring her to go to Coors' medical center to have forms filled out while she was sick; allowing Coors' nurse practitioner to override her private doctors' instructions; the nurse practitioner's failing to tell her supervisor that she had a sinus condition as well as conjunctivitis; and her supervisor's blaming her for not telling him that she had been released for work on January 18, when she had given him the medical treatment request form and he had put it into his letter tray without reading it.

Outrageous conduct can occur in an employment situation. *See, e.g., Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E. 2d 315 (1976) (allegation that defendant fired waitresses in alphabetical order until someone admitted stealing states a claim for outrageous conduct). However, Churchey's assertion that Coors' failure to follow its own personnel policies amounted to outrageous conduct confuses breach of contract with outrageous conduct. While the average member of the community may not approve of someone who breaches a contract, such conduct is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and ... [to cause] an average member of the community ... to exclaim 'Outrageous!' " *Restate-*

*ment, supra,* § 46 comment d.[7] The trial court correctly concluded that no reasonable person could have found Coors' conduct to be outrageous. *Cf. Restatement, supra,* § 46 comment d (recognizing that not all "acts that are definitely inconsiderate and unkind" create liability).

We reject Churchey's invitation to expand our definition of outrageous conduct. The framework set forth in *Rugg,* 476 P.2d 753, is sufficient for analyzing her claim and summary judgment on this claim is affirmed.

## VI.

For the reasons given above, we affirm in part, reverse in part, and remand the matter to the court of appeals with directions to return the cause to the trial court for further proceedings on Churchey's defamation and wrongful discharge claims. Summary judgment for Coors on Churchey's outrageous conduct claim is affirmed and no further proceedings are necessary with respect to that claim.

ERICKSON, J., concurs in part and dissents in part and VOLLACK, J., joins in the concurrence and dissent.

ROVIRA, J., concurs in part and dissents in part.

ERICKSON, Justice, concurring in part and dissenting in part:

Diana K. Churchey (Churchey), a former employee of the Coors Glass Plant of Coors Industries (Coors), was terminated for dishonesty arising from an abuse of company policies pertaining to medical leaves of absence. Thereafter, Churchey brought an action in the District Court of Jefferson County against Coors alleging: (1) wrongful discharge; (2) defamation; and (3) outrageous conduct. The district court, in resolving cross-motions for summary judgment, entered comprehensive orders granting Coors' motion for summary judgment on all three claims, and denying Churchey's motion for summary judgment. The court of appeals affirmed the district court. I agree with both the district court and the court of appeals, and would affirm the entry of summary judgment.

## I.

The following facts are established by evidence outside the pleadings submitted by Coors in conjunction with its motion for summary judgment, and by documents supplied by Churchey in support of her motion for summary judgment. Coors has provided its employees with a statement of its company policies in an employment manual. On January 17, 1983, Churchey called her supervisor, Doug Greer, and requested a medical leave of absence for a work related illness. Pursuant to Coors' policy, as set forth in the manual, Churchey was required to complete a Medical Treatment Request Form (MTR), and obtain approval at the Coors medical center (medical center), after a medical examination by Coors' personnel.[1] She was familiar with the pro-

---

7. Similarly, although the standard for outrageous conduct may appear superficially similar to the standard for exemplary damages in section 13–21–102(1), 6A C.R.S. (1987), the two are not the same. Exemplary damages may be awarded if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct," section 13–21–102(1)(a), provided that the plaintiff proves these elements beyond a reasonable doubt, section 13–25–127(2), 6A C.R.S. (1987). Outrageous conduct need only be proved by a preponderance of the evidence, section 13–25–127(1), and is an independent tort which entitles the plaintiff to compensatory damages. To the extent that the analysis in *Price v. Federal Express Corp.,* 660 F.Supp. 1388, 1395–96 (D.Colo.1987), is inconsistent with this analysis, it is not an accurate statement of Colorado law.

1. Coors' policy concerning leaves of absence provides:
 PURPOSE:
 Adolph Coors Company maintains the policy for granting leaves of absence to employees for unavoidable time off from work and where required by law. When leave of absence is granted, it will always be for the shortest time needed to accomplish the purpose of the leave.
 DEFINITION:
 A leave of absence covers authorized time off other than regular absence.
 REQUESTING AND GRANTING LEAVES:
 An approved leave of absence is all absences of more than ten consecutive calendar days off. All requests for leaves of absence are to be submitted in writing to the employee's supervisor as far in advance as possible. If a

cedures for obtaining medical leave because she had previously taken a medical leave of absence from March 17 to 29, 1982. Personnel policies were also posted on a company bulletin board and Coors held group meetings, which Churchey and others attended, to explain the policies in the employee manual.

Churchey delayed reporting to the medical center until late Tuesday, January 18, 1983. She was examined and diagnosed as having conjunctivitis. She was released for work on January 19. On January 19, she did not report for work and called her supervisor to again request a medical leave of absence. She was told to report to the medical center to obtain approval of her request but she did not go to the medical center that day. During the day, she was examined by her personal physician and diagnosed as having "maxillary sinusitis." Her physician released her from work until January 24, 1983.

On January 20, Churchey informed Greer of her physician's recommendations and requested a medical leave of absence. Greer told her to obtain authorization for her request from the medical center. Later that day, Churchey gave Greer the MTR form dated January 18. Greer did not read the form and assumed that Churchey had an approved leave of absence for the week ending January 21. At Churchey's request, Greer gave Churchey a second MTR form postdated to the following Monday, January 24, 1983. By postdating the form, Greer did not approve Churchey's prior absence from work. Greer informed her repeatedly in accordance with Coors' policies that she had to work unless her request for a leave of absence was approved by the medical center. Churchey, and not the

medical center, had the responsibility of informing Greer of the status of her request for a leave of absence. She never informed Greer that her request had only been approved for January 18.

Later that day, Churchey was examined by David Thekan, a nurse at the medical center, who told her she was released for work. Churchey became visibly angry and refused to sign the MTR form. Thekan subsequently changed the form to have her see the company doctor on January 21. The same day, Greer learned from Thekan that Churchey had not obtained approval for her absence on January 19 and 20. Greer immediately contacted an employee relations representative, Nancy Rees, and Rees' supervisor, Nate Ledgerwood. They reviewed Churchey's failure on both days to report her medical release for work and to report for work. Pending an investigation to determine whether her absence was excused by illness, they decided to suspend her pay as of Wednesday, January 19, the first day she had been released for work.

On the morning of January 21, 1983, Churchey was examined by the Coors company doctor, Steve George. She explained her symptoms and told George of her physician's diagnosis and recommendations. George released her to full duty that day and signed the MTR form dated January 24, 1983. Churchey told George that she had the week off and did not have to return to work until the following Tuesday, January 25. Churchey was in fact scheduled to work on January 21, 1983. George later called Greer and informed him that Churchey had been released to return to work that day but that she had informed him

requested LOA is not granted, the employee must report for work as scheduled. Failure to do so may result in disciplinary action for insubordination. (Refer to Work Rules/Corrective Discipline Policy.)
....
The initial request for a medical leave of absence is made through the supervisor (preferably in writing). The request is then documented on a Medical Treatment Request Form. The supervisor will have the employee take the request form and a personal physician's recommendation to the Coors Medical

Center (CMC), where the medical status will be evaluated. Coors Medical Center assumes the primary responsibility for approving medical leaves of absence. CMC will review the appropriateness and duration of the leave and may, when necessary, consult with the employee's supervisor, the Medical LOA Coordinator, the Vocational Rehabilitation Specialist, and the attending physician. CMC will approve or deny the medical aspects of the leave of absence request and will note their decision on the Medical Treatment Request Form.

that she was not scheduled to return to work until January 25.

Greer again requested a meeting with Rees and Ledgerwood. After reviewing Churchey's behavior and Coors' employment policies, they decided to suspend her employment and investigate the propriety of a possible termination action, if she failed to report for work on January 21. Churchey did not return to work until January 25. Greer, Ledgerwood, and Rees determined that Churchey's conduct constituted "dishonesty" because she failed to inform her supervisor of her medical releases to return to work on January 19 and 21 and because she misrepresented her work schedule to George. Under Coors' employment policies, employee "dishonesty" is subject to immediate dismissal. "Dishonesty" is defined in Coors' manual as: "To cheat, deceive, embezzle or defraud the company, including making or supplying false statements or information."

When Churchey returned to work on January 25, 1983, she was requested to meet with Greer and Ledgerwood to explain her medical releases and failure to return to work. Ledgerwood told Churchey that Coors' concern was not with whether she was in fact ill the prior week but with her dishonesty in her dealings with Coors. He informed her that her pay was suspended beginning that day and the next day, he notified her that she was terminated for dishonesty.

Pursuant to Coors' policies, Churchey appealed her dismissal to a five-member appeal board. The board consisted of two members chosen by Churchey and two by Coors, with the fifth selected by those four members. After considering evidence presented by both Churchey and Coors, the board unanimously upheld her termination for dishonesty.

Churchey subsequently filed a complaint in the District Court of Jefferson County alleging (1) that Coors defamed her by dismissing her for dishonesty; (2) that Coors' conduct in dismissing her was extreme and outrageous and intended to cause her severe emotional distress; and (3) that her discharge violated the procedural safeguards for due process guaranteed by Coors' personnel policies. On April 21, 1983, Coors filed a motion to dismiss for, *inter alia*, failure to state a claim upon which relief could be granted, C.R.C.P. 12(b)(5), and attached supporting affidavits and other documentation to the motion. Since Coors had attached matters outside the pleadings to its motion, the motion to dismiss for failure to state a claim was converted into a motion for summary judgment. *See* C.R.C.P. 12(b)(5); *Alexander v. Morrison–Knudsen Co.*, 166 Colo. 118, 444 P.2d 397 (1968), *cert. denied*, 393 U.S. 1063, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969). On May 24, 1983, Churchey moved for summary judgment, C.R.C.P. 56. In response to the cross-motions for summary judgment, the court issued an order dated October 3, 1983, granting Coors' motion for summary judgment on Churchey's claim for wrongful discharge.[2] In the order, the court noted that the respondent, Adolph Coors Company (Coors), had moved to dismiss for failure to state a claim, C.R.C.P. 12(b)(5), and, because matters outside the pleadings were presented, the pleading would be treated as a motion for summary judgment, C.R.C.P. 56. In disposing of the claim for wrongful discharge, the court found that "there was no genuine issue of material fact and that the employment was terminable at will." Because the court concluded that "[n]o action lies for wrongful discharge or breach of contract" for employment terminable at will, it granted Coors' motion for summary judgment on the wrongful discharge claim. On April 2, 1984, Coors filed a second motion for summary judgment on the remaining claims. In an order dated May 31, 1984, the court granted Coors' summary judgment motion with respect to Churchey's claims for outrageous conduct and defamation. On ap-

2. In *Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98 (1952), we stated that "[t]he fact that both parties make motions for summary judgment, and each contends in support of his re- spective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Id.* at 14, 252 P.2d at 102.

peal, the court of appeals affirmed the trial court. *Churchey v. Adolph Coors Co.*, 725 P.2d 38 (Colo.App.1986).

## II.

Churchey's first claim for relief is based on defamation caused by her dismissal by Coors for "dishonesty." Churchey maintains that she is unable to procure employment because she must disclose the grounds for her dismissal to prospective employers. She asserts that she committed no dishonest acts to justify her dismissal by Coors. In my view, the trial court properly granted Coors' motion for summary judgment on Churchey's defamation claim. Churchey's dismissal was justified since, under Coors' definition of "dishonesty," she was dishonest in her dealings with Coors.[3] Establishing that Churchey was dishonest bars recovery for her def-

amation claim. *Walters v. Linhof*, 559 F.Supp. 1231 (D.Colo.1983) (elements of defamation claim are: (1) a defamatory statement; (2) publication of the statement to a third party; (3) fault on the part of the publisher of the statement; and (4) actionability of statement *or special damages*); *Gomba v. McLaughlin*, 180 Colo. 232, 504 P.2d 337 (1972) (truth is absolute defense to libel action); Restatement (Second) of Torts § 581A (1977) (no liability for defamation unless statement is defamatory and false). Since Churchey's evidence did not establish that a genuine issue of fact exists concerning her dishonesty in her dealings with Coors, it is unnecessary to resolve whether publication occurred when Churchey was forced to repeat the reason for her discharge to third parties. *See* Restatement (Second) of Torts § 577 comments k and m (1977).[4]

---

**3.** Coors does not argue in its brief to this court that there was no defamation because Churchey was in fact terminated for dishonesty. Coors relies on the lack of publication of the alleged defamatory statement in support of the court's granting of summary judgment. Coors does, however, in addressing the wrongful discharge claim, contend that Churchey was dishonest in her dealings with Coors and that she was terminated for that reason. Coors also argued before the trial court that the alleged defamatory statement was truthful. In my view, the truthfulness of the alleged defamatory statement is within the scope of our review.

**4.** After reviewing comment k and the supporting illustrations, however, I believe that the comment was not intended to govern "compelled self-publication," which the majority defines as compelled publication by the defamed party. Comment k provides:

> There is an intent to publish defamatory matter when the actor does an act for the purpose of communicating it to a third person or with knowledge that it is substantially certain to be so communicated.
>
> It is not necessary, however that the communication to a third person be intentional. If a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person, the conduct becomes a negligent communication.

The unduly broad language of comment k is limited by the following illustrations:

> 4 A and B engage in an altercation on the street where there are a number of pedestrians. During the course of the quarrel, A in a loud voice accuses B of larceny, the accusa-

tion being overheard by a number of passers-by. A has published a slander.

> 5 A, a cartoonist, while working at his desk in an office building represents B, a member of the editorial staff, in a ludicrous attitude. A leaves the cartoon on his desk, where it can easily be seen by numerous people who pass by the desk. A stenographer subsequently sees the cartoon. A has published a libel.
>
> 6 A writes a defamatory letter to B and sends it to *him* through the mails in a sealed envelope. A knows that B is frequently absent and that in his absence his secretary opens and reads his mail. B is absent from his office and his secretary reads the letter. A has published a libel.

Based on the illustrations, comment k addresses negligent publication by the defamer and not voluntary publication by the defamed person. Comment m is the only comment in the Restatement (Second) of Torts dealing with voluntary publication by the defamed person. Comment m provides:

> One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third person, has not published the matter to the third person if there are *no other circumstances*. If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and if the circumstances indicated that communication to a third party would be likely, a publication may properly be held to have occurred.

Comment m observes that communication of defamatory matter by the defamed person does not generally constitute publication and discusses only one exception to the rule. The majority concedes, and I agree, that the exception con-

Under C.R.C.P. 56, a motion for summary judgment will be granted only where the pleadings, deposition, answers to interrogatories, and admissions show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bailey v. Clausen*, 192 Colo. 297, 557 P.2d 1207 (1976); *O.C. Kinney, Inc. v. Paul Hardeman, Inc.*, 151 Colo. 571, 379 P.2d 628 (1963); C.R.C.P. 56(c). When a motion for summary judgment is made and supported by affidavits, which may be supplemented by depositions, answers to interrogatories, or further affidavits, an adverse party cannot rest upon the mere allegations or denials of his pleading. C.R.C.P. 56(e). The party must respond by affidavits or as otherwise provided by rule 56, and his response must set forth specific facts showing genuine issues of material fact. *Id.* If the party does not respond, summary judgment shall be entered against him. *Id.; see Abrahamsen v. Mountain Tel. & Tel. Co.*, 177 Colo. 422, 494 P.2d 1287 (1972) (summary judgment eliminates the time and expense of trial when there is no material issue of fact and when judgment should be entered as matter of law).

The majority cites *Abrahamsen v. Mountain States Telephone & Telegraph Company*, 177 Colo. at 426, 494 P.2d at 1289, for the proposition that "for purposes of reviewing the summary judgment we accept as true Churchey's allegation that the statement was false." At 1343. The majority's reliance is misplaced. In *Abrahamsen*, the plaintiff challenged the trial court's dismissal of his claims for libel and conspiracy. The claims alleged that the defendants had conspired to falsely charge and accuse the plaintiff in inter-office reports of the theft of daily addendum lists to the telephone directories of the corporate defendant. We reversed the trial

court's granting of the defendant's motion for summary judgment, finding that a genuine issue of fact existed regarding the defamatory character of the inter-office reports. We declared that, on a motion for summary judgment, allegations in pleadings must be accepted as true even if denied by the moving party's pleadings *"unless the depositions and admissions on file, together with the affidavits, clearly disclose that there is no genuine issue as to any material fact, and that, as matter of law, summary judgment should be entered."* 177 Colo. at 426, 494 P.2d at 1289 (emphasis added). In reversing the district court, we concluded that the defendant had presented no evidence outside the pleadings establishing that the inter-office reports were not libelous. Accordingly, the allegations in the plaintiff's pleadings that the reports were libelous, though denied in defendant's pleadings, had to be taken as true. In this case, under C.R.C.P. 56, Churchey's allegation that her dismissal for "dishonesty" was defamatory can only be taken as true if Coors presented no evidence outside the pleadings challenging the truthfulness of the allegedly defamatory statement of Coors.

In my view under C.R.C.P. 56, Coors has established as a matter of law, that Churchey was terminated for dishonesty stemming from her abuse of Coors' policies pertaining to medical leaves of absence.[5] Coors provided documentation apart from the pleadings establishing that Churchey abused Coors' policies governing medical leaves of absence. She misrepresented her work schedule to Coors' medical personnel and failed to discharge her responsibilities by informing her supervisors of her medical releases to return to work on January 19, 20, and 21 and by not reporting for work on those days. In her motion for

tained in comment m does not apply in this case because Churchey was aware of the defamatory nature of the statement at the time she communicated it to third parties.

5. The trial court did not grant summary judgment based on the truthfulness of the allegedly defamatory statement of Coors. A motion for summary judgment is only granted if there are no material factual issues and if a party is

entitled to judgment as a matter of law. Since no factual findings are necessary in deciding a summary judgment motion, this court is in the same position as the trial court in determining whether summary judgment should have been granted based on Churchey's failure to establish the defamatory nature of her dismissal for "dishonesty."

summary judgment, Churchey stated that the facts were essentially undisputed. She supplied additional material to support her motion for summary judgment. She submitted, *inter alia*, a memorandum written by Greer documenting Coors' version of her dismissal; medical reports of private physicians establishing her illnesses from January 18, 1983, to January 21, 1983; and her affidavit stating that her absence from work had been caused by illness and that she could not understand why she needed approval of the medical center to excuse her absence from work. She presented no material evidence outside the pleadings contesting Coors' account of her conduct. In view of the undisputed evidence in the record, there is no genuine issue of material fact that Churchey's conduct constituted dishonesty under the policy manual. Her dishonest conduct is not excused by her alleged illnesses during the week of January 17.

The majority contends that a material issue of fact prevents summary judgment. According to the majority, under the evidence,

> [t]he record [supports] at least three conclusions: (1) Churchey was instructed to return to work on January 21, but deliberately failed to follow those instructions; (2) Churchey was released from work until January 24 and violated no work rule by going home; and (3) Churchey was instructed to return to work but mistakenly thought she did not have to return to work until January 24.

At 1342. In my view, the fact that there are three possible conclusions based upon the record does not create an issue of fact that is material to the resolution of the case. Concerning the first and third conclusions, Coors' definition of "dishonesty" does not require an *intent* to engage in dishonest conduct; it merely requires an employee to deceive Coors by supplying false information. In this case, Churchey did not refute Coors' evidence that she had misrepresented her work schedule to George, Coors' company doctor, before George signed her medical release form. Churchey informed him that she was released from work the entire week of Janu-

ary 18, despite the fact that she was scheduled to work on January 21. Although the dismissal of Churchey seems harsh in view of her conduct, Churchey has not asked us to determine whether the policy manual accurately defines "dishonesty." *See Knapp v. Post Printing & Publishing Co.*, 111 Colo. 492, 144 P.2d 981 (1943) (in determining if words are libelous, they are given their ordinary, popular meaning); Restatement (Second) of Torts § 563 (1977) (meaning of allegedly defamatory communication is "that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express"). Accordingly, we must use Coors' definition in determining whether Churchey was properly dismissed for dishonesty.

The majority also states that a material issue of fact exists because

> "the record contains contradictory statements and evidence regarding whether Churchey had an obligation to inform her supervisor of the medical center's instructions.... One of the affidavits submitted by Coors indicates that it is the employee's responsibility to inform the supervisor of a medical release, but another Coors' affidavit states that it is standard procedure for the nurse practitioner to inform the supervisor."

At 1341. In my view, the two statements are perfectly consistent and do not create a material issue of fact. Although personnel at the medical center typically report the condition of an employee, who is referred to the medical center, to the employee's immediate supervisor, the employee has the ultimate responsibility of ensuring that the information is transmitted to her supervisor. Churchey's failure to periodically report the status of her leave request to her supervisors ignored her responsibility and constituted deceitful conduct.

Accordingly, I would affirm the trial court's granting of summary judgment on Churchey's claim for defamation.

### III.

Churchey's third claim for relief is for wrongful discharge in violation of Coors'

policies. The record establishes that Churchey was terminable at will. Accordingly, her wrongful discharge claim is dependent on our holding in *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), which recognized, in the context of employment terminable at will, a claim based on an employer's noncompliance with established employment policies governing employee termination. Churchey claims that under Coors' policies she could not be dismissed because she was, at most, absent without leave, an offense that was not grounds for automatic dismissal. The offense is only grounds for dismissal if, after being warned, the employee commits the offense a second time. Churchey also argues that Coors lacked good cause to discharge her and by discharging her did not follow its policy governing medical leaves of absence.[6] Coors claims that, even if *Continental Air Lines* applies in this case, Coors fully complied with its policies in dismissing Churchey. I agree with Coors.

Based on the parties' evidence outside the pleadings, no genuine issue of material fact remains whether Coors complied with the provisions in the manual. Coors has established (1) that Churchey was dishonest in her dealings with Coors; (2) that, in accordance with Coors' policies, she was automatically dismissed for her dishonesty; (3) that she requested a medical leave of absence requiring approval of Coors' medical center; (4) that her supervisor complied with the requirement and sent Churchey to the medical center for approval of her request; (5) that an employee relations representative, Nancy Rees, pursuant to the provisions of the manual, met with Churchey's supervisor on several occasions and, after some discussion, agreed to the dismissal of Churchey for dishonesty; (6) that Churchey was allowed, as set forth in Coors' policies, to appeal her dismissal to a five-member board; and (7) that, after considering evidence presented by both Coors and Churchey, the board unanimously approved Churchey's dismissal for dishonesty. In my view, Churchey has not established by evidence outside the pleadings that Coors did not adhere to its employment policies in dismissing her.[7]

Accordingly, I would affirm the court of appeals.

I am authorized to say that Justice ROVIRA joins part II of this concurrence and dissent in part. I am also authorized to say that Justice VOLLACK joins this concurrence and dissent.

ROVIRA, Justice, concurring in part and dissenting in part:

I concur in the judgment of the majority except as to Part III. I do not agree that *Restatement (Second) of Torts* § 577 comment k (1977), was intended to govern "compelled self-publication." On this issue I agree with the observations made by Justice Erickson in footnote 4 of his concurring and dissenting opinion. Accordingly, I would affirm the judgment of the court of appeals on the defamation claim. In all other respects I join the majority opinion.

---

6. Churchey argues that the policy requirements governing leaves of absence are inapplicable in this case since her absence from work was for less than ten days; however, she conceded in her memorandum brief in opposition to defendant's motion for summary judgment dated May 4, 1984, that she specifically requested a leave of absence from her supervisor and thereby triggered the policy requirements governing leaves of absence.

7. Since there is no genuine issue of fact concerning Coors' compliance with the policies in its manual, it is unnecessary to decide if *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), applies in this case.