Hieu SMITH, Plaintiff,

v.

**COLORADO INTERSTATE GAS COMPANY, Defendant.**

Civ. A. No. 91–B–752.

United States District Court,
D. Colorado.

May 22, 1992.

Craig M. Cornish, Cornish and Dell'Olio, Edward A. Gleason, Mulliken, Gleason & Weiner, P.C., Colorado Springs, Colo., for plaintiff.

Raymond M. Deeny, N. Dawn Webber, Sherman & Howard, Michael L. Williams, Colorado Interstate Gas Co., Colorado Springs, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

### I. Background

Plaintiff Hieu Smith (Smith) moves to amend her third amended complaint to conform to the 1991 Civil Rights Act (Pub.L. 102–166, Nov. 21, 1991, 105 Stat. 1071) (the Act) and for reconsideration of two March 16, 1992 magistrate judge orders. At oral argument Smith withdrew her motion to reconsider the magistrate judge's order denying her motion to compel and, thus, I consider only her motion to reconsider the order compelling her to answer Colorado Interstate Gas (CIG)'s discovery requests. Also, CIG moves for partial summary judgment. Finally, both parties have filed numerous motions in limine. All motions were argued on May 8, 1992.

Smith, a Vietnamese female, alleges she was discharged from for her drafting position at CIG because of her gender and race. CIG claims she was fired because her productivity was declining, she made numerous personal phone calls, and she conducted personal business at work. After CIG fired her on March 2, 1990, she filed a Title VII claim with the Colorado Civil Rights Commission (CCRC) and an unemployment compensation claim with the Colorado Division of Employment.

In May 1990 Smith started working for the City of Colorado Springs as a temporary drafter and had applied for a permanent drafting position with the city. In August and September 1990 CIG notified the City of Colorado Springs that Smith had retained a lawyer to file her CCRC charges and unemployment compensation claim. Soon thereafter the City of Colorado Springs notified Smith that she was ineligible for the permanent drafting position and discharged her from her temporary position.

On May 7, 1991 Smith filed this action. Her third amended complaint alleges two Title VII claims (one for discriminatory termination and one for retaliation), two claims under 42 U.S.C. § 1981 (1976) (one for discriminatory termination and one for retaliation), and six state law claims (breach of contract/promissory estoppel, intentional infliction of emotional harm, invasion of privacy, violation of public policy, fraud, and estoppel). In a November 8, 1991 order, 777 F.Supp. 854, I dismissed Smith's Section 1981 claim for discriminatory termination and state law claims for invasion of privacy and violation of public policy, but denied CIG's motion to dismiss her intentional infliction of emotional harm claim.

## II. Motion to amend

### A. *Governing standards*

Smith seeks leave to amend her complaint to plead claims under the Act. She seeks to reinstate her Section 1981 discriminatory termination claim, amend her pending Section 1981 retaliation claim, and add prayers under the Act for compensatory and exemplary damages and expert witness fees.

This case was pending when the Act became law on November 21, 1991. The Act states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." 1991 Civil Rights Act, Pub.L. No. 102–166 § 402(a), 105 Stat. at 1099. The Act is silent whether it applies retroactively to pending cases.

█ To determine whether a statute applies retroactively to pending cases I must look for clear Congressional intent to that effect. *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.,* 911 F.2d 1377, 1390 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Hansel v. Public Service Co. of Colorado,* 778 F.Supp. 1126, 1136 (D.Colo.1991). The language and legislative history of the Act are unclear whether it applies retroactively. *Hansel,* 778 F.Supp. at 1136.

█ Absent clear Congressional intent, I must presume that the Act applies prospectively to matters affecting substantive rights and liabilities unless a contrary intent appears. *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1559–60, 84 L.Ed.2d 572 (1985); *DeVargas,* 911 F.2d at 1392–1393; *Gibbons v. Pan American Petroleum Corp.,* 262 F.2d 852, 855 (10th Cir.1958). Statutes addressing procedural matters, however, are presumed to apply retroactively. *Arnold v. Maynard,* 942 F.2d 761, 762 n. 2 (10th Cir.1991) ("Where a new statute deals only with procedure, *prima facia* it applies to all actions—to those which have accrued or are pending, and to future actions.").

Each of Smith's proposed amendments must be analyzed to determine whether it affects substantive rights or liabilities—to which the presumption against retroactivity applies—or procedural matters—to which the presumption of retroactivity applies. Substantive law creates, defines, and regulates rights and liabilities as opposed to procedural or remedial law which prescribes a method for enforcing the rights or obtaining redress for their invasion. *See Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1446 (11th Cir.1991) (applying Georgia law); *Richardson v. Honda Motor Co., Ltd.,* 686 F.Supp. 303, 304 (M.D.Fla.1988).

### B. *Section 1981 claims*

█ Smith's proposed Section 1981 claims invoke portions of the Act affecting substantive rights and liabilities. After *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132

(1989) discriminatory discharges, such as the one alleged here, were not actionable under Section 1981. In response to *Patterson*, the Act again made wrongful discharges actionable under Section 1981. *See* 42 U.S.C. § 1981(b) (1991). Because the Act renewed liability under Section 1981 for discriminatory discharges, it affects substantive rights and liabilities. Where, as here, there is no clear congressional intent to the contrary, I presume that the Section 1981 amendments of the Act do not apply retroactively. *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1559–60; *DeVargas,* 911 F.2d at 1393; *Hansel,* 778 F.Supp. at 1137. Accordingly, amendment would be futile because Smith cannot maintain her proposed Section 1981 claims under the Act.

### C. Compensatory and punitive damages

■ Similarly, the compensatory and punitive damages allowed under the Act impose new liabilities on Title VII defendants. Before the Act became law, Title VII relief was limited to equitable remedies. *See* 42 U.S.C. § 2000e–5(g) (1972). The Act, however, now exposes Title VII defendants to compensatory and punitive damages. *See* 42 U.S.C. § 1981a(b) (1991). These new legal remedies differ substantively from the equitable remedies available under Title VII before the Act became law. Because these additional legal remedies create new liability for Title VII defendants, I join the other district courts which have concluded that the addition of these remedies affect substantive rights and liabilities. *See, e.g., Sudtelgte v. Sessions,* 789 F.Supp. 312, (W.D.Mo.1992); *Ribando v. United Airlines, Inc.,* 787 F.Supp. 827 (N.D.Ill.1992); *Thomas v. Frank,* 791 F.Supp. 470, (D.N.J. 1992); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991). Once again, where, as here, there is no clear Congressional intent indicating the Act should be applied retroactively, the presumption against retroactivity applies to the Act's imposition of compensatory and punitive damages. *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1559–60; *DeVargas,* 911 F.2d at 1393; *Hansel,* 778 F.Supp. at 1137. Amendment would be futile because these remedies are not available in this case under the Act.

### D. Expert witness fees

■ Expert witness fees, however, are procedural. *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Sudtelgte,* 789 F.Supp. at 314. Absent clear congressional intent to the contrary, the presumption of retroactivity applies. *Arnold,* 942 F.2d at 762 n. 2. The Act is unclear regarding retroactivity so I presume that the Act applies retroactively to this procedural issue. Thus, expert witness fees are available here under the Act and amendment is appropriate.

### E. Conclusion

■ Leave to amend shall be freely given when justice so requires and if the following conditions are absent: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Leave to amend may be denied where the amendment fails to state a claim. *Schepp v. Fremont Co., Wyoming,* 900 F.2d 1448, 1451 (10th Cir.1990).

Those portions of the Act affecting substantive rights and liabilities do not apply retroactively. Consequently, Smith's proposed amendments setting forth a new Section 1981 discriminatory termination claim, modifying her Section 1981 retaliation claim, and requesting compensatory and punitive damages are futile. Thus, leave to amend as to these proposed claims is denied. *Schepp,* 900 F.2d at 1451.

Expert witness fees, however, are recoverable here under the Act. Because none of the factors militating against leave to amend are present regarding this amendment, Smith may amend her complaint to add a demand for expert witness fees.

### III. Motion to reconsider the magistrate judge's March 16, 1992 order

A magistrate judge's order on a pre-trial matter will not be reconsidered unless clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) (1990). The magistrate judge's March 16, 1992 order compelling Smith to answer specific discovery requests supporting certain allegations in her third amended complaint is not clearly erroneous or contrary to law. Accordingly, I will not reconsider the order. CIG's request for attorney fees incurred in responding to both motions to reconsider, however, is denied.

### IV. CIG's motion for partial summary judgment

#### A. *Summary judgment standards*

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment shall be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material factual disputes are those that might affect the outcome of the case under the governing law. *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Summary judgment, however, should not be entered if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in favor of the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

#### B. *Breach of contract/promissory estoppel claim*

Smith contends that CIG breached its contract with her when it terminated her contrary to the terms of CIG's published standard operating procedures (SOP) (in ef-

fect, an employment manual) and its supervisor's manual. She also contends that statements made by her supervisor, Larry Conry, during her October 1989 job performance evaluation formed the basis for a contract which was breached when she was discharged. During this performance evaluation Conry stated that she would not be fired as long as she did a good job.

CIG responds that Smith was an at will employee who could be discharged at any time without cause or notice. CIG further argues that because Smith was unaware of the employment manuals her at will employment status was not transformed into a contractual employment arrangement.

■ Where, as here, an employee is hired for an indefinite period of time he or she is an at will employee whose employment may be terminated by either party without cause or notice, and whose termination does not give rise to a cause of action. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711 (Colo.1987). Liability can arise for the discharge of an otherwise terminable at will employee, however, under two narrow exceptions: (1) where there is an implied contract or promissory estoppel arising out of company policy and employment manuals, *Keenan,* 731 P.2d at 711–712; or (2) where there is a wrongful discharge in retaliation for exercising statutory rights or duties, or refusing to obey an employer's order to violate the law. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 109 (Colo.1992). *See also Allen v. Dayco Products, Inc.,* 758 F.Supp. 630, 633 (D.Colo.1990) (setting forth the two exceptions).

■ Smith relies on the contract and promissory estoppel theories stated in the first exception to impose liability on CIG for firing her. Under ordinary contract principles an employee may be entitled to relief for a termination

if he can demonstrate that in promulgating the termination procedures the employer was making an offer to the employee—that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in

understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain—and second, that his initial or continued employment constituted acceptance of and consideration for these procedures.

*Keenan,* 731 P.2d at 711 (citation omitted).

 An offer in the form of an employment manual must be communicated to be effective. *Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo.1990). CIG argues that because Smith was unaware of these employment manuals no offer was communicated to her. Smith contends, however, that these manuals were communicated to her when she received notice of them in a March 31, 1988 written warning. In this warning Conry wrote: "because you have not been willing to correct these problems, I must take the next step in our Standard Operating Procedures, listed in Employee Status No. 10, Discipline, by giving you a formal written warning."

 An employee's knowledge of the existence of an employment manual, although he or she does not understand its terms, is sufficient to communicate an offer to an employee. The Colorado Supreme Court adopted the following reasoning from *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980) for the proposition that personnel policies or practices can form the basis for an enforceable contract between an employer and employee:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No preemployment negotiations need take place and the parties minds need not meet on the subject; *nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices* or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with obligation."

*Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1348–1349 (Colo.1988) (quoting *Toussaint,* 408 Mich. at 613, 292 N.W.2d at 892) (emphasis added).

Thus, Smith did not have to know the particulars of CIG's employment policies and practices to prove that an offer was extended to her. Rather, under the reasoning adopted in *Churchey,* mere knowledge of the existence of an employment manual is sufficient. The reference to the SOP in her March 31, 1988 warning is sufficient to create a genuine dispute as to whether she knew of the SOP. Furthermore, Smith's continued service after receiving notice of the SOP creates a genuine issue of material fact whether she accepted the offer.

Where, as here, there is conflicting evidence whether a contract has been formed the case must be submitted to the factfinder. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo. 1986). Accordingly, summary judgment is denied as to Smith's breach of contract claim to the extent it is premised on the SOP.

 Smith, however, testified that she never relied on the SOP. She, therefore, cannot maintain a promissory estoppel claim based on the SOP. *Kuta,* 799 P.2d at 383. Accordingly, summary judgment is appropriate on Smith's promissory estoppel claim.

 Finally, standing alone, Conry's assurance that Smith would not be fired as long as she performed well is insufficient to impose liability on CIG for her discharge. This assurance does not fall under the two narrow exceptions recognized in

Colorado as converting an at will employment arrangement into one to which liability attaches if an employee is terminated without cause. *See Allen,* 758 F.Supp. at 632. Accordingly, Smith cannot premise her breach of contract/promissory estoppel claim on Conry's assurance.

### C. *Intentional infliction of emotional harm claim*

■ CIG claims that, as a matter of law, its conduct was not outrageous and, therefore, it is not liable on Smith's claim for intentional infliction of emotional harm. Conduct supporting an intentional infliction of emotional harm claim must be

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Churchey,* 759 P.2d at 1350.

■ It is for the court, in the first instance, to determine whether reasonable people may differ as to whether a defendant's conduct has been sufficiently extreme and outrageous to result in liability. *Id.* I conclude that, taking Smith's allegations of CIG's conduct as true, that conduct does not constitute outrageous conduct.

■ Furthermore, Smith's intentional infliction of emotional distress claim fails because Colorado's Worker's Compensation Act provides the exclusive remedy for her work related emotional distress. Smith contends that CIG is liable for intentional infliction of emotional harm because it strictly disciplined her for conducting personal business at work while white, male employees were not subject to the same pattern of strict discipline for the same conduct.

Although in a May 8, 1991 order I denied CIG's motion to dismiss this claim, Smith's response to CIG's summary judgment motion demonstrates no genuine issue of material fact that Smith's emotional distress is a work related injury. Consequently, compensation under Colorado's Worker's Compensation Act is her exclusive remedy for her emotional harm.

■ Compensation under the Worker's Compensation Act is intended to be an employee's exclusive remedy against an employer for job-related injuries. *Curtiss v. GSX Corp. of Colorado,* 774 P.2d 873, 874 (Colo.1989). A right to compensation under the Worker's Compensation Act exists where:

(a) at the time of the injury, both the employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) at the time of the injury, the employee is performing services arising out of and in the course of his employment; and

(c) the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.

*Popovich v. Irlando,* 811 P.2d 379, 381–382 (Colo.1991).

Worker's compensation benefits for work related mental or emotional distress are recoverable if:

the claim is proven by evidence supported by a licensed physician or psychologist's testimony; the emotional strain has arisen primarily from the claimant's occupation and place of employment; the claim is not based in whole or in part, upon facts or circumstances that are common to all fields of employment; and the emotional distress is in and of itself either sufficient to render the employee temporarily or permanently disabled from pursuing the occupation from which the claim arose or to require medical or psychological treatment.

§ 8–52–102(2), 3B C.R.S. (1986 Repl.Vol.); *Popovich,* 811 P.2d at 382 n. 3.

The conduct cited by Smith supporting her intentional infliction of emotional harm claim relates to disciplinary measures im-

posed by CIG on her to prevent her from tending to personal matters during work. Indisputably, this conduct arises out of and in the course of Smith's employment. Accordingly, compensation under the Colorado's Worker's Compensation Act is her exclusive remedy for her emotional distress. *See Popovich,* 811 P.2d at 381; *Farmer v. Central Bank Corp.,* 761 P.2d 220, 222 (Colo.App.1988); *Hoffsetz v. Jefferson County School Dist. R–1,* 757 P.2d 155, 159 (Colo.App.1988).

### D. *Retaliatory discharge claim under 42 U.S.C. § 1981*

 Smith claims that CIG violated Section 1981 when it unilaterally informed the City of Colorado Springs about the CCRC charges and unemployment compensation claim she filed against CIG thus precipitating her termination from the City of Colorado Springs. This issue must be decided under the law as it existed when Smith filed her complaint on May 7, 1991 because, except for expert witness fees, the Act does not apply retroactively in this case. *See* section II, *supra.*

*Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) circumscribed the rights protected by Section 1981: the right to make contracts and the right to enforce contracts. *Patterson,* 491 U.S. at 176, 109 S.Ct. at 2372. Where, as here, the right to make contracts is implicated, Section 1981 liability attaches only when a defendant refuses to enter into a contract with another person for discriminatory reasons. *Patterson,* 491 U.S. at 176–177, 109 S.Ct. at 2372–2373. Section 1981 liability, therefore, extends to only the offeror.

The City of Colorado Springs denied Smith a promotion to a permanent position after receiving information from CIG regarding her CCRC charges and unemployment compensation claim. CIG did not make the decision to deny her that permanent drafting position. Thus, CIG is not liable under Section 1981 for the City of Colorado Springs' refusal to hire Smith and summary judgment is appropriate on Smith's Section 1981 retaliatory discharge claim.

### E. *Fraud and equitable estoppel claims*

Smith premises her fraud and equitable estoppel claims on certain positive evaluative statements in her October 13, 1989 job performance evaluation. This evaluation stated that Smith "has been successful in meeting all of our past goals" and that she "turns out a large quantity of acceptable work." When Conry presented this evaluation to her, he stated that he was very pleased with her and that her performance had improved as a result of the rules he had set for her.

 To prove a fraud or estoppel claim a plaintiff must establish, *inter alia,* that the plaintiff reasonably relied on a false representation or conduct to her detriment. *Morrison v. Goodspeed,* 100 Colo. 470, 477–478, 68 P.2d 458, 462 (1937) (fraud); *Dove v. Delgado,* 808 P.2d 1270, 1275 (Colo. 1991) (estoppel).

 At Smith's unemployment compensation hearing Conry testified that Smith's productivity was below acceptable standards during all of 1989. Despite her substandard performance Conry testified that he deliberately falsified her evaluation by giving her a positive evaluation. Thus, CIG knowingly made false material representations to Smith about her productivity in her October 1989 evaluation.

However, the dispositive issue is whether there is a genuine question of fact that Smith relied on these representations to her detriment. Detrimental reliance is personal to the plaintiff. Smith presents no evidence that *she* relied detrimentally on these representations. Smith presented testimony by co-workers that *they* relied on their evaluations to identify bad work habits or problems so they could correct them. Smith, however, presented no evidence that *she* relied detrimentally on her evaluation. Therefore, summary judgment is appropriate on her fraud and estoppel claims.

## V. Motions in limine

CIG filed thirteen motions in limine on April 17, 1992 and May 7, 1992. Smith has filed three motions in limine. I reserve ruling until trial on those motions in limine which are not determined here.

### A. *CIG's motion in limine to exclude expert testimony regarding discrimination*

 Smith endorsed Dr. John M. Bermudez to testify as an expert witness that "he believes [Smith] was mistreated, and that her race and gender were important influencing factors in defendant's mistreatment of her" and that "defendant's treatment of [Smith] and its decision to terminate her were substantially motivated by [Smith's] race and gender." Similarly, Dr. Lenore E.A. Walker is proffered as an expert to testify "about the biases of Americans against Vietnamese and/or Asian-Americans, the psychology of persons of Asian culture, that the treatment of [Smith] by defendant's employees was probably influenced or caused by racial or gender biases, prejudices and stereotypes, and as to the emotional pain and suffering [Smith] experienced as a result of the way defendant treated her."

I have broad discretion in admitting and excluding expert testimony. *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). An expert may testify if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. In determining whether experts should be used, I ask whether an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. Fed. R.Evid. 702 advisory committee's notes.

Gender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert. Thus, on this basis alone the experts' testimony on discrimination should be excluded.

Additionally, testimony which articulates and applies the relevant law circumvents the fact-finder's decision making process by dictating how to decide the case or what result to reach. *Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). Although an expert can couch testimony in legal terms to aid the fact-finder in understanding facts in evidence, he or she cannot set forth legal conclusions. *Id.,* at 809.

Drs. Bermudez and Walker will testify that CIG discriminated against Smith because of her race and gender. Although experts can express an opinion on the ultimate issue in a case, Drs. Bermudez and Walker impermissibly seek to direct the result in this case. *See Specht,* 853 F.2d at 808. Accordingly, Drs. Bermudez and Walker shall not be allowed to testify that CIG discriminated against Smith.

### B. *CIG's motion in limine to exclude evidence of its size, earnings, and assets*

 CIG moves to exclude evidence of its size, earnings, and assets. This information would have been relevant to determine punitive damages under the Act. *See* 42 U.S.C. § 1981a(b)(3). However, because I denied Smith leave to amend her complaint to add a claim for punitive damages under the Act, and because under Colorado law this information may not be considered in assessing punitive damages, *see* § 13–21–102(6) 6A C.R.S. (1987 Repl.Vol.), it shall be excluded.

### C. *CIG's motion in limine to exclude evidence of other employee's phone use*

 CIG also moves to exclude evidence of other employees' phone use. CIG contends this evidence is irrelevant because other CIG supervisors did not place the same phone restriction on their departments as was placed on Smith's department.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence. Fed. R.Evid. 401. Whether Smith was treated differently because of her race and gender is a fact which is of consequence to the determination of this action. This evidence tends to show that white, male CIG employees were not disciplined or discharged because of their comparable personal phone use. This evidence makes it more probable than not that Smith was treated differently because of her race or gender. Thus, this evidence is relevant to prove that Smith was treated more severely than white, male employees. Also, the probative value of this evidence is not substantially outweighed by it unfair prejudice. Consequently, this evidence is not excludable under Fed.R.Evid. 403.

Accordingly, IT IS ORDERED THAT:

(1) Smith's March 30, 1992 motion for leave to amend IS GRANTED as to her request for expert witness fees, but DENIED as to her remaining proposed amendments;

(2) Smith's March 26, 1992 motion to reconsider the magistrate judge's March 16, 1992 order IS DENIED, and CIG's request for attorney's fees in responding to these motions IS ALSO DENIED;

(3) CIG's April 6, 1992 motion for partial summary judgment IS GRANTED in part as to that portion of Smith's first claim for promissory estoppel, second claim for intentional infliction of emotional harm, sixth claim for fraud, seventh claim for estoppel, and ninth claim for retaliatory discharge under 42 U.S.C. § 1981. Summary judgment IS DENIED as to Smith's first claim for breach of contract; and

(4) CIG's April 17, 1992 and May 7, 1992 motions in limine to exclude the testimony of Drs. Bermudez and Walker on the issue of discrimination and to exclude evidence of CIG's assets ARE GRANTED. CIG's motion in limine to exclude evidence of other employee's phone use IS DENIED. I shall reserve ruling on the other motions in limine until trial.