Michael **YONKER,** By and Through his next friend, Diana **HELSTROM,** and Diana Helstrom and Rip Helstrom, individually, **Plaintiffs–Appellees,**

v.

Richard **THOMPSON,** Defendant–**Appellant.**

No. 96CA1381.

Colorado Court of Appeals, Div. C.

May 15, 1997.

Katherine Karuschkat, P.C., Katherine Karuschkat, Denver, for Plaintiffs–Appellees.

Bruno, Bruno & Colin, P.C., Louis B. Bruno, Paul D. Godec, Denver, for Defendant–Appellant.

Opinion by Justice ERICKSON.*

Defendant, Richard Thompson, brings this interlocutory appeal pursuant to § 24–10–118(2.5), C.R.S. (1996 Cum.Supp.) from the trial court's denial of his motion to dismiss, on the basis of governmental immunity, the complaint of plaintiffs, Michael Yonker, by and through his next friend, Diana Helstrom, and Diana Helstrom and Rip Helstrom, individually. We reverse and remand with directions.

In 1989, the marriage of Diana Helstrom (mother) and David Yonker (father) was dissolved by a Nebraska district court decree. Pursuant to that decree, mother was granted sole custody of the parties' only minor child and father was granted reasonable visitation rights. The decree also provided that mother could permanently relocate to Colorado with the child.

In July 1990, father filed a motion in the Nebraska court seeking to modify custody. After a series of hearings, the Nebraska court entered an order on June 8, 1992, changing custody to father.

While the Nebraska action was pending, in February 1992, mother filed a competing action in Colorado requesting that the Colorado court exercise jurisdiction over child custody issues. In response, the Colorado court appointed a guardian ad litem to represent the child's interests.

On June 3, 1992, five days before the Nebraska court entered its order changing custody to father, the Colorado court ordered that custody of the parties' of minor child, plaintiff Michael Yonker, continue with mother. The court also forbade father from removing the child from Colorado and required that any visitation be supervised.

Father initially refused to agree to abide by the Colorado court's order. However, in February 1994, father contacted the Colorado guardian ad litem to arrange for supervised visitation.

Father also contacted defendant, Richard Thompson, who was an officer with the Denver Police Department, to see if he could find someone to supervise the visits. After no one else could be found to supervise the visitation, Thompson agreed to do so.

The first visitation took place at Thompson's home without incident. The second visit took place at a shopping mall where Thompson and the child met father and the child's grandfather.

Upon arriving at the mall, Thompson took the keys to father's car and searched the trunk. However, unbeknownst to Thompson, father had previously parked a rental car at the mall. While Thompson and the grandfather were drinking coffee, father, on the pretext that he was going to take his son to one of the stores, left the mall in the rental car, drove to a nearby airport, and flew his son in a private plane to Nebraska.

Plaintiffs brought this suit against Thompson asserting claims for (1) negligence, (2) breach of fiduciary duty, (3) breach of contract, and (4) exemplary damages. Thompson moved to dismiss the complaint pursuant to C.R.C.P. 12(b)(1) and C.R.C.P. 12(b)(5) on the basis that, as a "public employee," he was

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

immune from liability under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Thompson also argued that: (1) he had quasi-judicial immunity; (2) the breach of contract claim failed because of a lack of consideration; and (3) plaintiffs did not state a legally cognizable claim for exemplary damages.

The trial court granted Thompson's motion with regard to plaintiffs' contract claim but denied it as to the other claims for relief. Thompson brings this interlocutory appeal solely from the trial court's determination of sovereign immunity under the GIA.

I.

Defendant contends that the trial court erred in not finding that he was a "public employee" for purposes of the GIA. We agree.

In interpreting the GIA, our goal is to give effect to the intent of the General Assembly. *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996). Legislative intent is first determined by looking to the statutory language itself. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). If the language of a statute is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction. *Bloomer v. Board of County Commissioners,* 799 P.2d 942 (Colo.1990).

The GIA applies only to public entities and their employees. *See* §§ 24–10–102 and 24–10–105, C.R.S. (1988 Repl.Vol. 10A).

"Public entity" is defined as:

the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

Section 24–10–103(5), C.R.S. (1996 Cum. Supp.).

■ The judicial department, which is a branch of the state government and includes the district courts, constitutes a public entity for purposes of the GIA. *See* Colo. Const. arts. III & VI; *see also Jenks v. Sullivan,* 826 P.2d 825 (Colo.1992); *Mentzel v. Judicial Department,* 778 P.2d 323 (Colo.App.1989).

A "public employee" under the GIA is defined, in pertinent part, as:

an officer, employee, servant, or *authorized volunteer of the public entity,* whether or not compensated, elected, or appointed, but does not include an independent contractor or any person who is sentenced to participate in any type of useful public service. For the purposes of this subsection (4), *'authorized volunteer' means a person who performs an act for the benefit of a public entity at the request of and subject to the control of such public entity.* . . .

Section 24–10–103(4), C.R.S. (1996 Cum. Supp.) (emphasis added).

In its order, the Colorado court stated that:

Respondent, David Yonkers, will not be permitted to remove the child from the State of Colorado. Further, . . . given the problems of visitation occuring [sic] in Colorado, the Court finds an emergency situation exists or could exist which requires this Court to take jurisdiction to prevent further mistreatment or abuse of the child with regard to the visitation issue.

The court went on to require that:

[A]ny visitation that does occur shall be a structured visitation, under the supervision of the Petitioner or an appropriate third party or agency, until such time as jurisdiction is resolved.

■ We note that a guardian ad litem is an agent of the court "through whom it acts to protect the interests of the minor." *Miller v. Clark,* 144 Colo. 431, 433, 356 P.2d 965, 966 (1960); *see also* § 14–10–116, C.R.S. (1996 Cum.Supp.); *Short v. Short,* 730 F.Supp. 1037 (D.Colo.1990).

■ Here, it is not disputed that Thompson agreed to volunteer his time to supervise father's visitations with the child with the

understanding that there was a Colorado court order requiring supervised visitation. It is also not disputed that mother, father, and the guardian ad litem all approved of Thompson's services as a visitation supervisor.

Based upon the foregoing, we conclude that, in supervising father's visitations, Thompson was performing an act for the benefit of the public entity. In addition, because his services were predicated upon the Colorado court's order requiring visitation to be supervised by "an appropriate third party" and were subject to the approval of the parties involved, including the guardian ad litem, we also conclude that he performed such services at the request of and subject to the supervised control required by the court, the public entity. Therefore, under the circumstances presented here, we hold that Thompson was an "authorized volunteer" and, thus, a "public employee" for purposes of the GIA.

## II.

Thompson next contends that the trial court erred in failing to dismiss plaintiffs' complaint because (1) the remaining claims do not fall within one of the statutory exceptions to immunity under the GIA and (2) plaintiffs failed to provide a written notice of claim in accordance with § 24–10–109, C.R.S. (1988 Repl.Vol. 10A). We agree.

The GIA provides that a public employee is immune from liability for all claims that lie or could lie in tort which arise out of injuries sustained from an act or omission of such employee which occurred during the performance of the employee's duties and within the scope of the employee's employment. Sections 24–10–102, 24–10–105, C.R.S. (1988 Repl.Vol. 10A) and 24–10–118, C.R.S. (1996 Cum.Supp.).

■ A public employee's immunity is waived for any claim that falls within one of six limited areas listed in § 24–10–106, C.R.S. (1988 Repl.Vol. 10A), or for any act or omission of the public employee that is willful and wanton. *See* § 24–10–118(2)(a), C.R.S. (1996 Cum.Supp.); *see also City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996) (a well

pled claim asserting that an employee acted willfully and wantonly must await determination at trial on the merits if there are disputed issues of fact).

■ Section 24–10–109 requires that a claimant provide notice of claim to the public entity within 180 days of the discovery of the injury. *See East Lakewood Sanitation District v. District Court,* 842 P.2d 233 (Colo. 1992). Compliance with the 180–day notice requirement is a jurisdictional prerequisite to suit. *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996); *see also* § 24–10–118(1)(a), C.R.S. (1996 Cum.Supp.) (compliance with § 24–10–109 in the forms and within the times provided therein shall be a jurisdictional prerequisite to an action against a public employee).

■ In general, a question involving sovereign immunity under the GIA is an issue of subject matter jurisdiction for the trial court's determination pursuant to C.R.C.P. 12(b)(1). *See Fogg v. Macaluso, supra.* However, if all relevant evidence has been presented to the trial court, and underlying facts are undisputed, we may decide the issue as a matter of law. *See Johnson v. Regional Transportation District,* 916 P.2d 619 (Colo.App.1995).

■ The plaintiff bears the burden of proving subject matter jurisdiction under the GIA. *Capra v. Tucker,* 857 P.2d 1346 (Colo. App.1993).

Here, plaintiffs do not argue that their claims are not tort actions or that they fall within one of the six exceptions listed in § 24–10–106. Rather, they contend that Thompson was acting outside the scope of his employment as a "public employee" because he failed to perform the duties entrusted to him, *i.e.,* "to be present and in fact, supervis[e] the visit."

■ The essence of plaintiffs' argument and the allegations of the complaint is that Thompson was negligent in performing his duties as a visitation supervisor. However, the mere failure by Thompson to perform adequately does not convert the action into one based upon conduct outside the scope of his employment. Thus, based upon the argu-

ment presented by plaintiffs, we conclude that they have failed to establish that their claims fall outside the GIA.

■ Moreover, insofar as plaintiffs do not argue that they gave timely notice of claim but rather that no notice was required because Thompson was not acting as a "public employee" within the "scope of his employment," we conclude that their complaint is also barred by the GIA based upon their failure to provide the required notice. *See* §§ 24–10–109 and 24–10–118; *Regional Transportation District v. Lopez, supra.*

### III.

Plaintiffs' contend that when, as here, a public employee is responsible for the welfare of a child—creating a special relationship—the GIA does not operate to bar a claim based upon such a relationship. Under the circumstances presented here, we disagree.

■ In enacting the GIA, the General Assembly intended that it apply to all claims that lie or could lie in tort regardless of whether that may be the type of action or form of relief chosen by the plaintiff. Sections 24–10–102 and 24–10–105. This broad scope of the GIA has been interpreted as manifesting a clear and unequivocal intent by the General Assembly to confine the circumstances in which sovereign immunity may be waived to the exceptions specified therein. *See State Department of Highways v. Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289 (Colo.1994). Thus, even if a duty is imposed upon the State pursuant to a statute or the common law, the State is liable for a breach of that duty "only if first it is determined that sovereign immunity is waived for the activity in question." *State Department of Highways v. Mountain States Telephone & Telegraph Co., supra,* 869 P.2d at 1292.

In light of our determination in the previous section that plaintiffs' claims are barred by the GIA, we conclude that plaintiffs' reliance on *Leake v. Cain,* 720 P.2d 152 (Colo. 1986) is misplaced. Immunity under the GIA is not waived merely because a "special relationship" may exist between the public em-

ployee and the injured party. *See Aztec Minerals Corp. v. Romer,* —— P.2d —— (Colo.App.1996); *see also* § 24–10–106.5, C.R.S. (1996 Cum.Supp.).

The order is reversed and the cause is remanded to the trial court with directions to dismiss plaintiffs' complaint.

NEY and PIERCE, JJ., concur.