**Jerry KING, Gail King, Curt Rogers, Aimee King–Rogers, David McGuire and Jennifer McGuire, Plaintiffs,**

v.

**Wayne Emmett McKILLOP, Defendant.**

**Civil Action No. 97–B–341.**

United States District Court, D. Colorado.

Aug. 29, 2000.

---

Eugene Deikman, Eugene Deikman, P.C., Denver, CO, for plaintiffs.

William J. Kowalski, Colleen A. O'Laughlin, Caplan and Earnest, LLC, Boulder, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Pending are several motions filed by Plaintiffs and Defendant Wayne Emmett McKillop. After consideration of the motions and briefs, I deny the motions in part and grant them in part.

### I.

As outlined in *King v. McKillop*, 53 F.Supp.2d 1056 (D.Colo.1999), this case arises out of a May 1996 forest fire in the Pike National Forest near Buffalo Creek in Jefferson County, Colorado. Third Amended Complaint, ¶ 9. The fire destroyed the property, buildings, and dwellings owned and occupied by Plaintiffs Jerry King, Gail King, Curt Rogers, Aimee King–Rogers, David McGuire, and Jennifer McGuire (collectively, Plaintiffs). Plaintiffs allege that the forest fire started as a result of a campfire built by several adolescents, *id.* at ¶ 11, students at CICS, a Jefferson County, Colorado charter school. Defendant, a teacher and student advisor at CICS, took sixteen CICS students on a camping trip in the Pike National Forest to a site used by he and his wife. Some of the students stayed in a cabin located on the land while others pitched tents near the cabin and at a site some distance from the cabin. At the more distant campsite, several students built a fire pit for campfires. An ember from one of the campfires apparently

started the forest fire. Remaining for trial, set to begin on Monday, October 2, 2000, are Plaintiffs' claims against Mr. McKillop for: 1) negligence (Claim Two); and 2) negligent infliction of emotional distress (Claim Four). Pursuant to § 13–21–111.5(3)(b), C.R.S., Defendant has designated the United States of America as a non-party at fault. Colorado state law governs this action.

## II.

### Plaintiffs' Pending Motions

### A. Motion to File Fourth Amended Complaint

In September 1999, Plaintiffs filed a motion for leave to file accompanying fourth amended complaint. In light of the orders issued in this case and the settlements of all Defendants except Mr. McKillop, I deny the motion as moot.

### B. Motion for partial summary judgment or, in the alternative, to strike, and motion *in limine*

Pursuant to § 13–21–111.5(3), C.R.S., Defendant designated the United States as a non-party at fault. According to Plaintiffs, there are no genuine material issues of fact regarding the alleged fault of the United States. *See* Fed.R.Civ.P. 56. Thus, Plaintiffs state they are entitled to partial summary judgment as to this issue.

According to Plaintiffs, Defendant has not endorsed any witness to testify as to the standards of care or negligence or other breach of duty of the United States Forest Service (USFS) in preventing or fighting the fire. Plaintiffs state further that no witness testified on deposition or made any statement criticizing the USFS or its employees.

### A. Fed.R.Civ.P. 56 Standard

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494.

### B. Section 13–21–111.5(3)(b)–Designation of non-parties

Section 13–21–111.5(3)(b), C.R.S. governs the designation of non-parties at

fault in Colorado state law actions, even where such actions are heard in federal court. *Resolution Trust Corp. v. Deloitte & Touche,* 818 F.Supp. 1406 (D.Colo.1993). Section 13–21–111.5(3)(b), C.R.S. allows Defendants to name non-parties who may be wholly or partially at fault for the alleged injuries. Such designation is improper, and, therefore may be stricken, "*only* if there is no substantial causal connection between the nonparties' alleged fault and [the Plaintiffs'] alleged injury." *Id.* at 1408 (emphasis added).

Here, Plaintiffs' Rule 56 motion fails to set forth any evidence demonstrating the absence of a genuine issue for trial. As such, Plaintiffs' motion should be denied. Assuming otherwise, Defendant presents evidence demonstrating that there are genuine issues of fact that must be resolved at trial.

## C. Defendant's Evidence

■ Defendant bases the designation of the United States as a non-party at fault on the following alleged failures of the USFS: 1) failure to implement a fire ban prior to the Buffalo Creek fire despite actual knowledge of unusually dry and hot conditions; 2) failure to notify the public of the fire danger and the unusually hot and dry conditions; and 3) inadequate availability of fire personnel and equipment on the first day of the fire, despite actual knowledge of extreme fire danger conditions.

Defendant submits evidence supporting his position that there is a substantial causal connection between the USFS' alleged fault and Plaintiffs' alleged injuries. Several USFS personnel testified that they knew the weather conditions prior to the Buffalo Creek fire were unusually hot and dry. Foley Depo. pp. 30–31, 43; Cables Depo., p. 21; Birch Depo., p. 25. In addition, there is evidence that the USFS was so concerned about the risk of fire that in the week prior to the Buffalo Creek fire some fire crew members worked overtime. Foley Depo., p.31–33; Shaffer Depo., pp. 83–84.

Defendant states further that despite its alleged knowledge of the unusually hot and dry conditions, the USFS failed to implement any fire restrictions or campfire bans. Cables Depo. p. 22; Shaffer Depo., p. 29; Qualls Depo., pp. 59–60. Mr. Cables, the forest supervisor, testified that they elected not to implement a ban because an existing Special Order was sufficient. Cables Depo. p. 22.

Furthermore, Mr. McKillop shows the USFS failed to notify the public in any other manner of the fire danger then present. The entrance to the Buffalo Creek recreation area has a fire danger sign with a space used to designate the current fire danger such as "moderate", "high", or "extreme." The sign was left blank two days prior to the Buffalo Creek fire, on the day Mr. McKillop and the students arrived. McKillop Depo. pp. 98–100; Lacey Depo: pp. 93, 97.

Finally, Mr. McKillop presents evidence that despite actual knowledge of the extreme danger, the USFS failed to have adequate resources available to fight a fire. *See* Foley Depo. pp. 33–37. Mr. Foley, a fire crew member assigned to the Buffalo Creek fire at its inception, testified that there was not adequate personnel on the first day of the fire. *Id.* at p. 55.

Hence, there is sufficient evidence to establish a substantial causal connection between the alleged fault or negligence of the USFS and Plaintiffs' damages. Furthermore, there are genuine issues of material fact as to the negligence, if any, of the USFS. Thus, I deny the Rule 56 motion, the motion to strike, and the motion *in limine.*

## III.

### Defendant's Pending Motions

**A. Motion *in limine* re: applicability of damages limitation set forth in the Colorado Governmental Immunity Act (CGIA), § 24–10–114(1), C.R.S.**

Defendant seeks a ruling that the damages limitations set forth in the CGIA

apply even if a public employee's negligent conduct is found to be willful and wanton.

Section 24–10–114, C.R.S. provides, in part:

(1) The maximum amount that may be recovered under this article in any single occurrence, whether from one or more public entities and public employees, shall be:

(a) For any injury to one person in any single occurrence, the sum of one hundred fifty thousand dollars;

(b) For an injury to two or more persons in any single occurrence, the sum of six hundred thousand dollars; except that, in such instance, no person may recover in excess of one hundred fifty thousand dollars.

According to Plaintiffs, language in § 24–10–118(1), C.R.S. pertaining to willful and wanton conduct negates the effect of the damages limitations contained in § 24–10–114(1), C.R.S.. *See* Motion *in limine* Response, pp. 2–3. I disagree.

Section 24–10–118, C.R.S. provides, in pertinent part:

(1) Any action against a public employee, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant and which arises out of injuries sustained from an act or omission of such employee which occurred or is alleged in the complaint to have occurred during the performance of his duties and within the scope of his employment, *unless the act or omission causing such injury was willful and wanton,* shall be subject to the following requirements and limitations, *regardless of whether or not such action against the public employee is one for which the public entity might be liable for costs of defense, attorney fees or payment of judgment or settlement under section 24–10–110:*

(a) Compliance with the provisions of section 24–10–109, in the forms and within the time provided by section 24–10–109, shall be a jurisdictional prerequisite to any such action against a public employee, *and shall be required whether or not the injury sustained is alleged in the complaint to have occurred as the result of the willful and wanton act of such employee* and failure of compliance shall forever bar any such action against a public employee. Any such action against a public employee shall be commenced within the time period provided for that type of action in articles 80 and 81 of Title 13 C.R.S., relating to limitation of actions, or it shall be forever barred.

(b) *The maximum amounts that may be recovered in any such action against a public employee shall be as provided in section 2410–114(1),(2);* and

(c) A public employee shall not be liable for punitive or exemplary damages arising out of an act or omission occurring during the performance of his duties and within the scope of his employment *unless such act or omission was willful and wanton.*

(d) The fact that a plaintiff sues both a public entity and a public employee shall not be deemed to increase any of the maximum amounts that may be recovered in any such action as provided in this section or in section 24–10–114.

(2) (a) A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29–5–111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his

·employment *unless the act or omission causing such injury was willful and wanton;* except that no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24–10–106(1).

Section 24–10–118, C.R.S. (emphasis added).

Plaintiffs' interpretation of the phrase "willful and wanton" in § 24–10–118(1), C.R.S. ignores the use of this language in §§ 24–10–118(1)(a), (1)(b), (1)(c), (2)(a), and (2)(b), C.R.S. A reading of § 24–10–118, C.R.S. in its entirety dictates that damages limitations contained in § 24–10–114, C.R.S. applies even in circumstances of willful and wanton conduct by a public employee.

The legislature delineated the specific circumstances under which willful and wanton conduct would effect CGIA protections for public employees. Comparison of the language set forth in subparagraphs (a), (b) and (c) of § 24–10–118(1)C.R.S. makes clear that the legislature intended that the damages limitations apply even if the employee's conduct was willful and wanton.

As set forth above, both subsections (a) and (c) of § 24–10–118(1), C.R.S. include language limiting the applicability of those specific subsections in circumstances involving willful and wanton conduct. Subsection (a) states that notice of claim requirements must be met even if allegations of willful and wanton conduct are made. Subsection (c) states that a public employee is not liable for punitive or exemplary damages "unless such act or omission was willful and wanton." Conversely, subsection (b), applying damages limitations to actions against public employees, provides no such limiting language. Furthermore, the plain language of §.24–10–118(1)(b), C.R.S. does not exclude willful and wanton conduct from the damages limitations applicable to public employees.

Because this specific language was included in subsections (a) and (c), but omitted from subsection (b), it can be inferred that the intent of the Colorado General Assembly was to include willful and wanton conduct within the damages limitations set forth in § 24–10–114, C.R.S. This conclusion is buttressed by the text of § 24–10–114, C.R.S. titled "Limitations on judgments" that contains the monetary cap on judgments against public entities *and* public employees, but does not contain the "willful and .wanton" language. Had the General Assembly intended to exclude the damages limitations in circumstances of willful and wanton conduct, § 24–10–114, C.R.S. and § 24–10–118(b), C.R.S. it would have so stated.

## B. Defendant McKillop's Status

Plaintiffs assert that if Mr. McKillop is found to be willful and wanton, he was acting outside the course and scope of his employment and, therefore, "not really acting as a public employee." *See* Plaintiffs' Response, p. 3. If that is indeed the case, Plaintiffs' counsel argues the CGIA damages limitations do not apply. *See Id.* Plaintiffs' arguments are without merit.

■ The . CGIA contemplates that a public employee may remain within the course and scope of his employment and yet be found willful and wanton. Section 24–10–118(2)(a), C.R.S. provides that a "public employee shall be immune from liability in any claim for injury ... which lies in tort or which could lie in tort ... and which arises out of an act or omission ... occurring during the performance of his duties and within the scope of his employment, unless the act or omission was willful and wanton." Thus, an employee may be within the scope of his or her employment and still be found willful and wanton.

This conclusion is reinforced by a separate section of the CGIA that renders public entities liable for the cost of a public employee's defense unless the employee's act or omissions did not occur within the

scope of his or her employment *or* the act or omission was willful and wanton. *See* § 24–10–110(1.5)(a), C.R.S. (1999) (emphasis added). The use of the disjunctive "or" demonstrates that there are two distinct circumstances in which a public entity is not responsible for defending an employee: (1) the employee's conduct was outside the scope of his employment; or (2) the employee's conduct was willful and wanton. *See Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343 (10th Cir.1987) (use of disjunctive in statute indicates alternatives intended).

■ Moreover, the failure of a public employee to perform his duties adequately does not render the employee's conduct outside the course and scope of his employment. *Yonker v. Thompson,* 939 P.2d 530 (Colo.App.1997). Such allegations are also insufficient to waive a public employee's immunity, even where the employee actually knew that the consequences would likely result if he failed to perform adequately. *Id.* at 534–35. (Police officer immune for failure to supervise visitation between father and child, even when officer knew a court order was in place stating substantial danger of flight existed).

■ In this case, Plaintiffs allege that Mr. McKillop negligently supervised a group of students while on a school camping trip. These allegations relate directly to Mr. McKillop's position as a public school teacher, thereby bringing him within the course and scope of his employment. His alleged failure to supervise adequately does not take him outside the course and scope. As such, Mr. McKillop remains entitled to the protections of the CGIA, including the damages limitations set forth in §§ 24–10–114 and 118(1), C.R.S.

## C. Motion to Bifurcate

Defendant states that he will be prejudiced if liability and damages are tried together. Thus, pursuant to Fed.R.Civ.P. 42(b), Mr. McKillop moves to bifurcate. Plaintiffs oppose the motion.

Federal Rule of Civil Procedure 42(b) gives a court discretion to bifurcate a trial if the court finds that bifurcation will: 1) avoid prejudice; 2) be more convenient; or 3) be conducive to expedition and economy. Fed.R.Civ.P. 42(b); *Easton v. City of Boulder,* 776 F.2d 1441, 1447 (10th Cir. 1985). *Ecrix Corp. v. Exabyte Corp.* 191 F.R.D. 611, 613 (D.Colo.2000).

### 1. Prejudice

■ As a result of the Buffalo Creek fire, Plaintiffs' losses were devastating, including their homes, personal belongings, livestock and pets. Based on the magnitude of the alleged damages, Defendant is concerned that the jury will be so sympathetic to Plaintiffs that they will feel compelled to find liability so that damages may be awarded. Defendant's concerns are speculative and run contrary to the well-founded presumption that jurors follow the court's instructions. Moreover, the issues in this case are not so complex that damage issues will confuse liability issues and appropriate jury instructions will be given to minimize any prejudice.

### 2. Convenience, Judicial Expedition, and Economy

■ Defendant argues that if the bifurcation motion is granted, public funds will be saved because if it is determined he was not negligent, the expenses of the damages phase will be saved. In addition, trial time will be saved. I am not persuaded. If I bifurcate and Mr. McKillop *is* found liable, the cost, inconvenience and delay in holding a second trial on damages outweighs any public funds saved if I do not bifurcate. Moreover, many witnesses will be required to testify more than once and two juries would be empaneled. Consequently, in my discretion, I deny Defendant's Rule 42 motion to bifurcate.

### 3. Motion *in limine* to exclude evidence and testimony

Mr. McKillop moves to exclude the evidence and testimony from two of Plaintiffs'

endorsed "expert" witnesses, Mary Ellen Sweeney and Jesus Garcia.

Plaintiffs seek to introduce evidence and testimony of these two witnesses that Mr. McKillop's alleged failure to supervise the students on the camping trip was willful and wanton, negligent, and proximately caused Plaintiffs' injuries. *See* Plaintiffs' Expert Witness Disclosures, Exhibits A, B, C, D (Garcia Deposition), and E (Sweeney Deposition). According to Defendant, this testimony and evidence should be excluded because it does not meet the prerequisites for admissibility pursuant to FRE 702.

FRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*See also Smith v. Colorado Interstate Gas Co.,* 794 F.Supp. 1035, 1044 (D.Colo.1992).

■ Expert testimony is inappropriate, when "an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *See id.* at 1044.

■ This case concerns whether a teacher negligently supervised students during a school trip. Plainly, this is an issue that a jury can evaluate and understand without expert assistance. Accordingly, this evidence does not meet the admissibility prerequisites of Rule 702.

■ Furthermore, such testimony must be excluded because it "impermissibly seek[s] to direct the result in this case." *Id.* "[T]estimony which articulates and applies the relevant law circumvents the ·fact finder's decision making process by dictating how to decide the case or what result to reach." *Id.* In letters pro-

vided by the proposed expert witnesses, these witnesses state that: 1) McKillop failed to supervise the students; 2) his failure constituted negligence, substandard care, and carelessness; and 3) his failure to supervise was the cause of Plaintiffs' damages. *See* Exhibits B and C.

■ Testimony that circumvents the jury's decision-making process is not admissible. *See Smith,* 794 F.Supp. at 1044. An expert "cannot set forth legal conclusions." *Id.* Thus, the testimony of Garcia and Sweeney must be excluded because they seek, impermissibly, to do "what the jury could do just as well on its own—, i.e., infer the presence or absence of negligence, [or willful and wanton conduct, ] from the circumstantial evidence adduced at trial." *Id.* (brackets added). To allow them to testify, would invade the role of the jury. Hence, I grant the motion *in limine.*

Accordingly, IT IS ORDERED that:

1.  Plaintiffs' motion to file accompanying fourth amended complaint is DENIED as moot;

2.  Plaintiffs' motion for partial summary judgment, or to strike, or *in limine* is DENIED;

3.  Defendant's motion *in limine* re: applicability of damages limitations is GRANTED;

4.  Defendant's motion to bifurcate is DENIED; and

5.  Defendant's motion *in limine* to exclude evidence and testimony is GRANTED.