**MIDWEST MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Dina Marie MURRY and Pamela Roland, Defendants,**

and

**Progressive Insurance Company, Defendant–Appellee,**

and

**St. Anthony Hospital, Defendant–Appellant.**

No. 97CA0523.

Colorado Court of Appeals, Div. V.

Sept. 3, 1998.

As Modified on Denial of Rehearing Dec. 10, 1998.

Godfrey & Associates, P.C., Brett M. Godfrey, James E. Puga, Denver, for Plaintiff–Appellee.

Spies, Powers & Robinson, P.C., Janet R. Spies, Denver, for Defendant–Appellee.

James D. King & Associates, P.C., Richard S. Hays, James D. King, Denver, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

In this interpleader and declaratory judgment action to determine the parties' respective rights and obligations under the Colorado Auto Accident Reparations Act (No–Fault Act), § 10–4–701, et seq., C.R.S.1997, defendant St. Anthony Hospital (St. Anthony) appeals from the summary judgment entered in favor of plaintiff, Midwest Mutual Insurance Company (Midwest), and the order that monies held in the district court registry be returned to Midwest. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

This action arises out of an automobile accident involving three cars. Pamela Roland, driving an uninsured vehicle, pulled her car to a stop alongside the road after running out of gas. Dina Marie Murry, driving a vehicle insured by Progressive Insurance Company (Progressive), stopped to render assistance to Roland. As Murry was pouring gasoline into Roland's vehicle, a third vehicle, insured by Midwest, struck Murry and both vehicles, severely injuring Murry. It is undisputed that Murry was a pedestrian at the time of the injury.

After receiving billing statements from St. Anthony for the treatment of Murry, Midwest filed its complaint for declaratory relief and interpleaded the sum of $100,000 into the registry of the court. Midwest sought a declaration concerning the apportionment of proceeds among the various interested parties and requested that the court clarify the rights and obligations of each party involved. Midwest argued that all three vehicles involved in the accident were "involved motor vehicles" for purposes of the No–Fault Act and that, therefore, each was responsible for its pro rata share, or one-third of the direct benefits owed to Murry. The interpleaded funds represented the minimum amount of Personal Injury Protection (PIP) benefits required by the No–Fault Act. The parties agreed that Murry was entitled to those benefits as a result of the accident. Midwest named, *inter alia*, St. Anthony, Progressive, Roland, and Murry as defendants in the action.

St. Anthony holds an assignment for payment of health care services provided to Murry. It is undisputed that the value of the services provided to Murry by St. Anthony is in excess of the minimum PIP coverage required under the No–Fault Act.

After commencing this action, Progressive voluntarily paid Midwest $33,333, representing what it contended was its pro rata share of the PIP benefits available to Murry. The

$100,000 interpleaded by Midwest included the money paid to it by Progressive.

As Murry's assignee, St. Anthony requested disbursement to it of $66,666.66 of the money held in the court registry. In its motion, St. Anthony argued that such distribution was proper because the only issue before the court was whether the insurance obligations of Midwest and Progressive were increased because of the uninsured status of Roland's vehicle. St. Anthony then moved for summary judgment. Thereafter, Progressive filed its own motion for summary judgment, contending that it had paid its one-third proportionate share of the PIP benefits due to Murry as a result of the accident and that, therefore, it was entitled to summary judgment in its favor on all claims.

The trial court granted St. Anthony's motion and ordered disbursement to St. Anthony of $66,666.66 of the funds held in the court's registry. The next day, the trial court granted summary judgment in favor of Progressive, concluding that Progressive's liability for PIP benefits was one-third of $100,000, the coverage required by the No–Fault Act.

Thereafter, St. Anthony and Midwest filed various motions regarding the remaining $33,333.34 held in the court's registry. The trial court, consistent with its earlier ruling granting summary judgment in favor of Progressive, concluded that Roland, as an uninsured motorist, was a statutory insurer pursuant to § 10–4–705, C.R.S.1997, and, thus, was required to pay her pro rata share of the required PIP benefits. The trial court further determined that, although the No–Fault Act authorizes an insurer who has paid PIP benefits to recover an equitable pro rata contribution from other liable insurers, it did not obligate Midwest to pay more than its one-third pro rata share in the first instance. Thus, the trial court granted Midwest's motion for summary judgment and ordered the disbursement of the remaining funds back to Midwest.

St. Anthony appeals only from the summary judgment entered in favor of Midwest. Midwest did not cross-appeal from any judg-ment, and thus, only the liability of Midwest is at issue here.

## I. Standing

■ Relying on *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.*, 874 P.2d 1049 (Colo.1994), Midwest contends that, because St. Anthony is only an incidental beneficiary of Murry's insurance policy, it does not have standing to pursue this action. We disagree.

In *Parrish Chiropractic Centers,* the supreme court concluded that the plaintiff was not entitled to enforce the terms of an insurance policy because it was not an intended beneficiary of the policy issued by the defendant. Unlike the situation here, the insurance policy there explicitly prohibited the assignment of any interest in the policy. *See* § 10–4–708.4(1)(a), C.R.S.1997 (insurer may not prohibit assignment of interest in policy).

Thus, we conclude that, as an assignee, St. Anthony has standing to pursue this appeal.

## II. Appropriateness of Declaratory Judgment Action

■ St. Anthony contends that the trial court erred in allowing Midwest to proceed with a declaratory judgment and interpleader action and thereby circumvent its statutory obligation of prompt payment of benefits. We are not persuaded.

We note at the outset that, contrary to Midwest's contention, St. Anthony adequately raised the issue of prompt payment before the trial court and, therefore, preserved it for our review. *Cf. Minto v. Lambert,* 870 P.2d 572 (Colo.App.1993) (argument not properly preserved for review if not presented to trial court).

■ The purpose of the Uniform Declaratory Judgments Law, § 13–51–101, et seq., C.R.S.1997, is to afford relief from the uncertainty surrounding legal rights and legal relations. That statute is remedial in nature and should be liberally construed and administered. *See Community Tele–Communications v. Heather Corp.,* 677 P.2d 330 (Colo. 1984); *see also* C.R.C.P. 57.

■ A party whose rights are affected by a statute may have the construction of such statute determined by declaratory judgment. *Toncray v. Dolan,* 197 Colo. 382, 593 P.2d 956 (1979).

■ An action for declaratory judgment may be maintained by an insurance company to determine if it will be liable to its insured for a defense and for payment of a possible judgment arising from a specified occurrence. *Beeson v. State Automobile & Casualty Underwriters,* 32 Colo.App. 62, 508 P.2d 402 (1973), *aff'd,* 183 Colo. 284, 516 P.2d 623 (1973).

Section 10–4–708(1), C.R.S.1997, provides that benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and amount of expenses incurred. If an insurer fails to make prompt payment, the person entitled to benefits may bring an action in contract and receive attorney fees, treble damages, and 18 percent interest when an insurer wrongly withholds benefits. *See* §§ 10–4–708(1.7) and 10–4–708(1.8), C.R.S.1997.

Here, Midwest sought a declaration from the court concerning the rights and obligations of the parties pursuant to § 10–4–707(3), C.R.S.1997. In so doing, it interpleaded the sum of $100,000 into the court's registry to satisfy any obligations it may have had to provide PIP benefits under its insurance policy and the No–Fault Act.

The result urged by St. Anthony would wrongfully penalize an insurance company which unsuccessfully sought declaratory relief by subjecting it to liability for treble damages, attorney fees, and statutory interest. Consequently, we conclude that the trial court did not err in allowing Midwest to determine its rights and obligations pursuant to a declaratory judgment and interpleader action.

III. Equitable Pro Rata Contribution

■ St. Anthony next contends that the trial court erred in granting summary judgment in favor of Midwest and returning to it the $33,333.34 from the court registry. St. Anthony interprets § 10–4–707(3) to require one insurer to pay the entire amount of PIP benefits due the insured under the No–Fault Act before asserting a claim for contribution against other insurers. Consequently, St. Anthony argues that, prior to seeking equitable pro rata contribution from Progressive and Roland, Midwest must first pay the whole covered loss of $100,000 to the insured or the insured's assignee. We agree.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

When reviewing a motion for summary judgment, we must give the nonmoving party the benefit of all favorable inferences that may be drawn from the facts. *Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App.1994). Also, review of the propriety of a summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Section 10–4–707(3) provides in pertinent part:

[W]hen a person injured is also an insured under a complying policy other than the complying policy insuring the vehicle out of the use of which the accident arose, primary coverage shall be afforded by the policy insuring said vehicle under section 10–4–706; but in the event two or more insurers have obligations under complying policies to pay benefits to the same person, the limits of coverage available as benefits to such person shall be the limits of a single complying policy.... *In the event two or more insurers are liable to pay benefits on the same basis, any insurer paying benefits shall be entitled to an equitable pro rata contribution from such other insurer.* (emphasis added)

■ In construing statutory provisions, we should give effect to the intent of the General Assembly. To discern such intent we look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *Allstate Insurance Co. v. Smith,* 902 P.2d 1386 (Colo.1995). Addi-

tionally, we must choose a construction that serves the purpose of the legislative scheme. *See Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

■ The purpose of the No–Fault Act is to avoid inadequate compensation to victims of automobile accidents. *See Allstate Insurance Co. v. Smith, supra. See also St. Luke's Hospital v. Industrial Commission,* 142 Colo. 28, 32, 349 P.2d 995, 997 (1960) ("Perhaps the best guide to [legislative] intent is the declaration of policy which frequently forms the initial part of the enactment.").

■ The No–Fault Act governs compensation without regard to fault for injuries arising from an automobile accident. It should be liberally construed to further its remedial and beneficent purposes. The legislative intent and policy behind the Act are to maximize insurance coverage and to ensure that persons injured in automobile accidents are fully compensated for their injuries. *Allstate Insurance Co. v. Smith, supra. See also* § 10–4–702, C.R.S.1997.

As quoted above, § 10–4–707(3) provides that an insurer "paying" benefits is entitled to a proportionate contribution "from" another liable insurer. The plain language of the statute, therefore, requires an insurer to pay benefits first and then to seek an equitable pro rata contribution from other insurers. The interpretation urged by Midwest would permit a responsible insurer to pay only its pro rata share and thereby set off its insurance obligation, thus rendering the need for contribution meaningless. *See Black's Law Dictionary* 328 (6th ed.1990) (defining "contribution" as "the act of any one or several of a number of co-debtors ... in reimbursing one of their number who had paid the whole debt or suffered the whole liability, each to the extent of his proportionate share").

The interpretation of the phrase "equitable pro rata contribution" urged by Midwest is contrary to the legislative purpose of the No–Fault Act because it may result in an insured receiving less than the statutory minimum required PIP benefits. For example, if, as here, an uninsured motorist is unwilling or unable to pay the benefits, an insured in full

compliance with the No–Fault Act may be penalized and receive inadequate compensation for his or her injuries because of a third party's non-compliance with the statute.

Midwest's construction would also place an onerous burden on the injured party to collect from each insurer, often through extended litigation, its pro rata share of the benefits owed, rather than having an insurer seek equitable pro rata contribution from other responsible insurers. In fact, the statutory scheme provides a procedure to coordinate benefits among responsible insurers. *See* § 10–4–709, C.R.S.1997.

St. Anthony's construction of "equitable pro rata contribution" is consistent with the supreme court's interpretation of "contribution" in a similar context. Construing the terms of an insurance policy, the supreme court held:

Contribution is a principle sanctioned in equity, and arises between co-insurors only, *permitting one who has paid the whole loss to obtain reimbursement from other insurers who are also liable therefor.*

*Republic Insurance Co. v. United States Fire Insurance Co.,* 166 Colo. 513, 516, 444 P.2d 868, 870 (1968) (emphasis in original).

*Government Employees Insurance Co. v. MFA Mutual Insurance Co.,* 802 P.2d 1122 (Colo.App.1990) (*GEICO* ), relied upon by Midwest, does not address the precise question presented here. Similar to the facts here, *GEICO* involved a two-car accident, one of which was a disabled vehicle. There, the division concluded that the unloading of a spare tire stored in the trunk of the disabled vehicle flowed from the operation of that vehicle, and therefore, that the payment of PIP benefits was to be allocated on an equitable pro rata basis between the insurer of the disabled car and the insurer of the other car. However, the *GEICO* court did not address whether one insurer must pay the whole loss before being entitled to contribution pursuant to § 10–4–707(3).

In summary, we conclude that § 10–4–707(3) requires an insurer to pay the PIP benefits due to the insured or the insured's assignee before it may seek contribution for such payments from other responsible insur-

ers. Accordingly, here, Midwest is required to pay St. Anthony the full policy limit of $100,000 because Murry's expenses exceed that amount. Thereafter, Midwest may seek contribution from other responsible insurers. The trial court erred in ruling otherwise.

That part of the judgment of the trial court allowing the interpleader action is affirmed. The summary judgment in favor of Midwest is reversed, as is the order releasing the funds in the registry, and the cause is remanded for further proceedings consistent with this opinion. On remand the trial court shall determine what interest, if any, should be awarded to St. Anthony.

ROTHENBERG and VOGT, JJ., concur.